No. 21-15660

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

BRIANNA BOLDEN-HARDGE,
*Plaintiff-Appellant,*

*v.*

OFFICE OF THE CALIFORNIA STATE CONTROLLER, et al.,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the Eastern
District of California, Case No. 2:20-cv-02081-JAM
The Honorable John A. Mendez, United States District Judge

_____

## APPELLANT'S OPENING BRIEF

_____

James A. Sonne
Zeba A. Huq
STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC
559 Nathan Abbott Way
Stanford, CA 94305
Telephone: (650) 723-1422
Facsimile: (650) 723-4426
jsonne@law.stanford.edu

Joshua C. McDaniel
HARVARD LAW SCHOOL
RELIGIOUS FREEDOM CLINIC
1525 Massachusetts Avenue
Griswold 405
Cambridge, MA 02138
Telephone: (650) 391-8788
Facsimile: (617) 496-2636
jmcdaniel@law.harvard.edu

Wendy Musell
LAW OFFICES OF WENDY MUSELL
180 Grand Avenue, Suite 1300
Oakland, CA 94612
Telephone: (510) 270-2252
Facsimile: (510) 228-1391
musell@wendymuselllaw.com

***Attorneys for Plaintiff-Appellant***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................ 6

STATEMENT OF ISSUES PRESENTED ................................................. 6

STATUTORY AND CONSTITUTIONAL AUTHORITIES ...................... 7

STATEMENT OF THE CASE ................................................................... 8

    A. Brianna Bolden-Hardge is a long-time public servant
       and devout Jehovah's Witness ..................................................... 8

    B. Bolden-Hardge seeks a job transfer to the California
       State Controller's Office, but on receiving the offer she is
       told to sign a loyalty oath that conflicts with her faith ............. 9

    C. Notwithstanding the SCO's demand, the state and its
       agencies exempt or accommodate other workers when it
       comes to swearing the oath ....................................................... 10

    D. Consistent with the state's treatment of others, Bolden-
       Hardge seeks a religious accommodation to the oath.............. 12

    E. The SCO rescinds Bolden-Hardge's job offer based on her
       request for religious accommodation ....................................... 13

    F. Bolden-Hardge sues, but the district court dismisses her
       complaint without leave to amend ........................................... 13

SUMMARY OF THE ARGUMENT ......................................................... 16

STANDARD OF REVIEW ...................................................................... 18

ARGUMENT ........................................................................................... 20

I. THIS COURT SHOULD RESTORE BOLDEN-HARDGE'S
    CLAIMS FOR RELIGIOUS DISCRIMINATION AND NON-
    ACCOMMODATION UNDER TITLE VII AND FEHA ............... 20

A. Title VII and FEHA outlaw as a form of discrimination an employer's refusal of a job based on the need for religious accommodation absent proof of undue hardship ...... 20

B. Religious objections to loyalty oaths in particular trigger protection under Title VII, FEHA, and related laws ............... 26

C. Bolden-Hardge adequately pled that, in refusing to hire her due to a conflict between her religious beliefs and the oath, Defendants violated Title VII and FEHA ...................... 30

    1. Bolden-Hardge pled a prima facie case ............................... 30

    2. Defendants cannot prevail on the pleadings based on the affirmative defense of undue hardship ........................ 33

D. The district court erred in determining on the pleadings that there was no conflict between Bolden-Hardge's faith and a job requirement .............................................. 38

II. THIS COURT SHOULD RESTORE BOLDEN-HARDGE'S DISPARATE-IMPACT CLAIM UNDER TITLE VII .................... 44

A. Title VII forbids employer practices that have a disparate impact on religious practitioners without justification ........... 44

B. Bolden-Hardge pled an impact claim based on the effect of Defendants' oath policy on religious believers .................... 48

C. The district court erroneously dismissed the disparate-impact claim for the "same reasons" as the disparate-treatment claim, and for lack of statistics ............................... 49

III. THIS COURT SHOULD RESTORE BOLDEN-HARDGE'S FREE-EXERCISE CLAIMS UNDER THE FEDERAL AND CALIFORNIA CONSTITUTIONS ................................................. 53

A. A plaintiff pleads a free-exercise claim where she alleges that a government policy substantially burdens her religious beliefs and is subject to strict scrutiny ..................... 53

B.  Bolden-Hardge pled that Defendants' insistence on the oath substantially burdened her religious exercise and warrants strict scrutiny .......................................................... 58

C.  The district court rightly accepted that Bolden-Hardge pled a substantial burden but erred in finding she failed to plead that the oath was not generally applicable ................ 63

IV.  IN THE ALTERNATIVE, THIS COURT SHOULD REVERSE AND REMAND TO ALLOW BOLDEN-HARDGE TO AMEND ...................................................................... 66

CONCLUSION ........................................................................ 67

STATEMENT OF RELATED CASES .................................................... 69

CERTIFICATE OF COMPLIANCE

ADDENDUM: STATUTORY AND CONSTITUTIONAL AUTHORITIES

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco*,
277 F.3d 1114 (9th Cir. 2020) ................................................ 54, 55, 64

*Anderson v. Gen. Dynamics Convair Aerospace Div.*,
589 F.2d 397 (9th Cir 1998)................................................. 24

*ASARCO, L.L.C. v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) ................................................ 24, 33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................ 18, 19

*Balint v. Carson City*,
180 F.3d 1047 (9th Cir. 1999)................................................. 37

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................ 19, 58, 64

*Bessard v. Cal. Cmty. Colls.*,
867 F. Supp. 1454 (E.D. Cal. 1994) ................................................*passim*

*Beyda v. City of Los Angeles*,
76 Cal. Rptr. 2d 547 (Ct. App. 1998) ................................................ 21

*Bhatia v. Chevron U.S.A. Inc.*,
734 F.2d 1382 (9th Cir. 1984)................................................. 24, 34, 36, 37

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ................................................ 22

*Cal. Fair Emp. & Hous. Comm'n v. Gemini Alum. Corp.*,
418 Cal. Rptr. 3d 906 (Ct. App. 2004) ................................................ 22

*Cal. Parents for the Equalization of Educ. Materials v. Torlakson*,
973 F.3d 1010 (9th Cir. 2020) ................................................ 55, 58

*Cath. Charities of Sacramento v. Superior Ct.*,
10 Cal. Rptr. 3d 283 (Ct. App. 2004) ................................................ 54

*Chilton v. Contra Costa Cmty. Coll. Dist.*,
127 Cal. Rptr. 659 (Ct. App. 1976) ................................................ 63

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ................................................ 57, 58, 62

*Cole v. Richardson,*
    405 U.S. 676 (1972) ....................................................... 63, 64

*Cook v. Lindsay Olive Growers,*
    911 F.2d 233 (9th Cir. 1990) ............................................ 21

*Dothard v. Rawlinson,*
    433 U.S. 321 (1977) ..................................................... 47, 51

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
    575 U.S. 768 (2015) ....................................................*passim*

*EEOC v. Townley Eng'g & Mfg. Co.,*
    859 F.2d 610 (9th Cir. 1988) ............................................ 23

*Eminence Cap., L.L.C. v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ....................................... 44, 66

*Emp. Div. v. Smith,*
    494 U.S. 872 (1990) ...................................................*passim*

*Foman v. Davis,*
    371 U.S. 178 (1962) ..................................................... 19

*Fraternal Ord. of Police v. City of Newark,*
    170 F.3d 359 (3d Cir. 1999) ............................................ 57

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) ................................................*passim*

*Gamble v. Kaiser Found. Health Plan, Inc.,*
    348 F. Supp. 3d 1003 (N.D. Cal. 2018) ............................. 46

*Garcia v. Spun Steak Co.,*
    998 F.2d 1480 (9th Cir. 1993) ...................................... 49, 51

*Garcia v. Woman's Hosp. of Tex.,*
    97 F.3d 810 (5th Cir. 1996) ........................................ 47, 51

*Hartmann v. Cal. Dep't. of Corr. and Rehab.,*
    707 F.3d 1114 (9th Cir. 2013) ................................. 16, 18, 30

*Heller v. EBB Auto Co.,*
    8 F.3d 1433 (9th Cir. 1993) ........................... 21, 22, 42, 50

*Hemmings v. Tidyman's, Inc.,*
    285 F.3d 1174 (9th Cir. 2002) ....................... 45, 49, 50, 51

*Hung Ping Wang v. Hoffman,*
    694 F.2d 1146 (9th Cir. 1982) ....................................... 46

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ....................................................... 46

*Karasek v. Regents of Univ. of Cal.*,
    956 F.3d 1093 (9th Cir. 2020) ............................................ 8

*Lawson v. Washington*,
    296 F.3d 799 (9th Cir. 2001)................................... 3, 27, 32

*Lee v. Hertz Corp.*,
    330 F.R.D. 557 (N.D. Cal. 2019) .................... 45, 49, 51, 52

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000).................................. 19, 53, 66

*Lynch v. Freeman*,
    817 F.2d 380 (6th Cir. 1987).......................................... 46

*Malabed v. N. Slope Borough*,
    335 F.3d 864 (9th Cir. 2003)...................................... 25, 38

*Metoyer v. Chassman*,
    504 F.3d 919 (9th Cir. 2007)........................................ 21

*Miller v. Bd. of Supervisors of Trinity Cnty.*,
    175 Cal. Rptr. 133 (Ct. App. 1981) ............................ 11, 61

*Muhammad v. N.Y.C. Transit Auth.*,
    52 F. Supp. 3d 468 (E.D.N.Y. 2014) .................................. 47

*N. Coast Women's Care Med. Grp. v. Superior Ct.*,
    81 Cal. Rptr. 3d 708 (Ct. App. 2008) ................................ 54

*Opuku-Boateng v. California*,
    95 F.3d. 1461 (9th Cir. 1996) ..................................*passim*

*Paige v. California*,
    291 F.3d 1141 (9th Cir. 2002)........................................ 45

*People v. Woody*,
    40 Cal. Rptr. 69 (Ct. App. 1964) ..................................... 54

*Polich v. Burlington N., Inc.*,
    942 F.2d 1467 (9th Cir. 1991) ................................... 19, 66

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003)..................................... 65, 66

*Raytheon v. Hernandez*,
    540 U.S. 44 (2003) .................................................. 45

*Rosenfeld v. S. Pac. Co.*,
  444 F.2d 1219 (9th Cir. 1971) ..................................... 25, 38

*Rutan v. Republican Party of Illinois*,
  497 U.S. 62 (1990) .............................................. 60

*S.F. Police Officers Ass'n v. San Francisco*,
  138 Cal. Rptr. 755 (Ct. App. 1977) ........................ 34, 35

*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ............................... 55

*Seaworth v. Pearson*,
  203 F.3d 1056 (8th Cir. 2000) ................. 34, 36, 37, 38

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ....................................... *passim*

*Smith v. Cnty. Eng'r of San Diego Cnty.*,
  72 Cal. Rptr. 501 (Ct. App. 1968) ..................... *passim*

*Soldinger v. Nw. Airlines, Inc.*,
  58 Cal. Rptr. 2d 762 (Ct. App. 1996) .............. 21, 23, 36

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .............................. 18

*Stout v. Potter*,
  276 F.3d 1118 (9th Cir. 2002) .............................. 46

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) .......................... *passim*

*Tagore v. United States*,
  735 F.3d 324 (5th Cir. 2013) ................. 34, 36, 37, 38

*Tandon v. Newsom*,
  141 S. Ct. 1294 (2021) ............................... 5, 57, 62

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
  450 U.S. 707 (1981) ..................................... *passim*

*Tooley v. Martin-Marietta Corp.*,
  648 F.2d 1239 (9th Cir. 1981) ................. 24, 37, 38

*Torcaso v. Watkins*,
  367 U.S. 488 (1961) ................................. 55, 56, 59

*Uzeugbunam v. Preczewski*,
  141 S. Ct. 792 (2021) .................................... 66

*Vernon v. City of Los Angeles,*
   27 F.3d 1385 (9th Cir. 1994) ............................................ 60
*W. Va. State Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943) ...................................... 26, 27, 32, 62

## Constitutional Provisions

U.S. Const., amend. I ......................................................*passim*

Cal. Const. art. I, § 4 ............................................. 4, 6, 54, 55

Cal. Const. art. XX, § 3 ..................................................*passim*

## Statutes

Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ...........................*passim*
   42 U.S.C. § 2000e-2(a)(1) .................................... 19
   42 U.S.C. § 2000e-2(a)(2) .................................... 45
   42 U.S.C. § 2000e-2(k) ........................................ 4
   42 U.S.C. § 2000e-2(k)(1)(A) ................................ 45
   42 U.S.C. § 2000e-7 ....................................... 25, 43
   42 U.S.C. § 2000e(j) .......................................... 20
Religious Freedom Restoration Act of 1993, 42 U.S.C.
   § 2000bb *et seq.* .............................. 22, 23, 28, 56
28 U.S.C. § 1291 ............................................................ 6
28 U.S.C. § 1331 ............................................................ 6
28 U.S.C. § 1343 ............................................................ 6
28 U.S.C. § 1367 ............................................................ 6
42 U.S.C. § 1983 ............................................................ 6
California Fair Employment and Housing Act, Cal. Gov't
   Code § 12900 *et seq.* ...............................................*passim*
   Cal. Gov't Code § 12940 ................................ 6, 19
   Cal. Gov't Code § 12940(*l*)(1) ................... 3, 20, 23
Cal. Gov't Code § 3100 .......................................... 11, 61
Cal. Gov't Code § 3101 .......................................... 11, 61
Cal. Gov't Code § 3102 .......................................... 11, 61
Cal. Gov't Code § 3103 ................................................ 11

Cal. Gov't Code § 18150 ................................................ 10, 34, 43

Cal. Gov't Code § 18151 ................................................ 10, 34, 43

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ................................................... 16, 18

Fed. R. Civ. P. 15(a) ........................................................ 19, 66

29 C.F.R. § 1607.4 .............................................................. 46

## Legislative Materials

Governor's Veto Message for S.B. 115, 2009–10 Cal. Leg., 10
Reg. Sess. (2009) ........................................................ 29, 32

## Other Authorities

California Department of Human Resources, *Oath of
Allegiance and Declaration of Permission to Work for
Persons Employed by the State of California* (Oct. 2019),
https:///bit.ly//3p5RCCa ............................................ 11, 41

California State University, *The State Loyalty Oath* (2011),
https://bit.ly/3AOHYGp .............................................. 10, 11

Chin et al., California Practice Guide: Employment
Litigation (The Rutter Group 2020) ............................ 21, 30

EEOC Decision No. 85-13, 38 Fair Empl. Prac. Cas. (BNA)
1884, 1985 WL 32782 ..................................................*passim*

Jaschik, Scott, *Loyalty Oath Compromise*, Inside Higher Ed
(June 3, 2008), https://bit.ly/3DFTMfU ............................ 11

Paddock, Richard C., *Enduring Oath Still Testing Loyalties*,
Los Angeles Times (May 2, 2008), https://lat.ms/3DMBxFC ............ 11

## INTRODUCTION

This appeal concerns a state agency's decision to revoke a job offer it had made to a candidate after she objected to swearing a government loyalty oath based on her religious beliefs as a Jehovah's Witness. Although the district court nowhere doubted the sincerity of Plaintiff's beliefs or that the state and its agencies make accommodations or exceptions to the oath in other cases, it dismissed her claims under Title VII of the Civil Rights Act of 1964, the First Amendment to the United States Constitution, and their state-law analogues. The district court's dismissal of each claim was incorrect and should be reversed.

Brianna Bolden-Hardge is a devout Jehovah's Witness and devoted public servant for the State of California, and in that order. For although she is loyal to her employer, Bolden-Hardge's religious beliefs forbid her from pledging a higher loyalty to anyone but God and in no circumstance can she commit to take up arms to defend the state or engage in politics. These beliefs have accordingly compelled Bolden-Hardge to object to swearing an oath that California requires for most state workers.

Like employees of other California agencies, in several jobs Bolden-Hardge has held with the state she has been accommodated in her dual commitments to God and government when it comes to swearing the

oath. In particular, Bolden-Hardge and other religious objectors to the oath have been permitted to condition its signing on a written addendum that, despite the oath's promise to swear "faith and allegiance" to the state and "defend" it against "all enemies," Cal. Const. art. XX, § 3, their first loyalty is to God and they will not commit to take up arms. But after Bolden-Hardge accepted a job offer from the State Controller's Office (SCO) and raised her concerns about the oath, the agency balked. Rather than allow this or any other accommodation, the SCO pulled the offer.

Bolden-Hardge sued, alleging violations of (1) Title VII and the California Fair Employment and Housing Act (FEHA) based on the SCO's refusal to hire Bolden-Hardge in the face of her need for religious accommodation; (2) Title VII based on the SCO oath policy's disparate impact on a class of religious believers; and (3) the free-exercise clauses of the federal and state constitutions based on the SCO's forcing Bolden-Hardge to choose between her faith and a government job. Contrary to the district court's ruling, Bolden-Hardge stated a claim on each theory.

First, to plead a prima facie case of discrimination arising from the failure to accommodate religion under Title VII or FEHA, a plaintiff need only allege that the employer took an adverse action against her because

of a conflict between a job requirement and her sincere religious beliefs. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015); Cal. Gov't Code § 12940(*l*)(1). Notably, this Court has recognized as actionable under Title VII the forcing of a Jehovah's Witness employee to swear allegiance to the state over God. *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2001). And as the agency tasked with enforcing Title VII, the EEOC has reached the same understanding. EEOC Decision No. 85-13, 38 Fair Empl. Prac. Cas. (BNA) 1884, 1985 WL 32782.

Even so, the district court dismissed Bolden-Hardge's Title VII and FEHA claims, reasoning that it saw no conflict between her faith and the oath requirement because the job Bolden-Hardge sought did not include the prospect of military service and that the addendum she proposed as an accommodation was incompatible with the state oath law.

But not only did the district court improperly second-guess Bolden-Hardge's religious beliefs in objecting to the oath, her refusal to swear it at the price of a job is in plain conflict with the SCO's insistence she do so. Additionally, the addenda that other state agencies allow at least preclude a ruling on the pleadings that no accommodation was possible— the one Bolden-Hardge proposed or otherwise. *See Opuku-Boateng v.*

*California*, 95 F.3d. 1461, 1467 (9th Cir. 1996) ("Only if the employer can show that no accommodation would be possible without undue hardship is it excused from taking the necessary steps to accommodate."). Finally, the state oath law's text nowhere forbids accommodation, and Title VII preempts state law that permits illegal discrimination in any event.

Second, Bolden-Hardge pled a Title VII claim under the "disparate impact" theory by alleging that the SCO oath policy has a discriminatory effect on the basis of religion by systematically excluding certain religious minorities from employment. 42 U.S.C. § 2000e-2(k). In dismissing the claim, the district court faulted Bolden-Hardge for not citing statistics to show the impact. But not only are statistics not required at the pleadings stage, the disparity between those who cannot swear the oath as required by the SCO on religious grounds and those who can is plain on its face.

Finally, a plaintiff pleads a violation of the free-exercise clauses of the federal and state constitutions where she alleges that a government policy substantially burdens her religious exercise—including in the workplace. *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716–18 (1981). And a plaintiff who alleges that the government makes exceptions to the policy in question is in an even stronger position since

the lack of a government policy's "general applicability" triggers strict constitutional scrutiny—which cannot be satisfied on the pleadings. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876–77 (2021).

In rejecting Bolden-Hardge's free-exercise claims, the lower court did not dispute that she pled a substantial burden. Rather, it reasoned strict scrutiny cannot apply because the oath law recites no exceptions on its face. But as the Supreme Court reiterated just this year, strict scrutiny applies where exceptions are permitted or the law provides a mechanism for allowing them—even where no exception has yet been made. *Id.* at 1879; *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Bolden-Hardge alleged that the state makes numerous accommodations or exceptions to the oath, and on amendment, she could add more. This is far beyond what is needed to defeat dismissal.[1]

This Court should reverse and remand for Defendants to answer. Alternatively, it should reverse and remand to allow Bolden-Hardge to cure any supposed pleading defect by amendment.

---

[1] Bolden-Hardge also alleged that Defendants violated her free-exercise rights for the further reason that their oath policy "infringed upon her combined rights of free exercise of religion and free speech." ER-16.

## JURISDICTIONAL STATEMENT

Bolden-Hardge sued the California State Controller's Office and Controller Betty Yee in the U.S. District Court for the Eastern District of California, alleging claims under Title VII, 42 U.S.C. § 2000e-2; FEHA, Cal. Gov't Code § 12940; the First Amendment to the U.S. Constitution (via 42 U.S.C. § 1983); and Article I, Section 4 of the California Constitution. The district court had original jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

The district court granted Defendants' motion to dismiss and entered a final judgment on March 23, 2021. ER-3. Bolden-Hardge filed a timely notice of appeal on April 13, 2021. ER-115. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1.  Whether Bolden-Hardge pled a claim for discrimination based on the refusal to accommodate her religious beliefs under Title VII and FEHA by alleging that Defendants refused her a job because of a conflict between their requirement that she swear a loyalty oath and her sincere religious objections to that oath.

2.      Whether Bolden-Hardge pled a disparate-impact claim under Title VII by alleging that Defendants' approach to the oath systematically excludes certain religious believers from their employ.

3.      Whether Bolden-Hardge pled a claim under the federal and state free-exercise clauses by alleging that Defendants' approach to the oath substantially burdened her religious exercise and that the state's accommodations or exceptions to the oath in other cases, or the combined impact of Defendants' approach on other rights, triggers strict scrutiny.

4.      Whether Bolden-Hardge should at least be given leave to amend to cure any defects in the foregoing claims.

## STATUTORY AND CONSTITUTIONAL AUTHORITIES

All relevant statutory and constitutional authorities are set out in the Addendum attached to this brief.

**STATEMENT OF THE CASE[2]**

### A. Brianna Bolden-Hardge is a long-time public servant and devout Jehovah's Witness.

A lifelong Californian and working mother of two, Brianna Bolden-Hardge has provided devoted service to her State for many years. ER-7, 10. In that time, Bolden-Hardge has worked for several different state agencies—including the California Franchise Tax Board (FTB), Department of Corrections and Rehabilitation, and Department of Housing and Community Development. *Id.*

Bolden-Hardge is also a devout Jehovah's Witness. ER-7. And consistent with the religious beliefs of other Witnesses, Bolden-Hardge's chief allegiance is to the Kingdom of God, which she believes to be a government in heaven. *Id.* Accordingly, Bolden-Hardge's faith forbids her from swearing primary allegiance to any human government or pledging to engage in political or military activity—including taking up arms on behalf of the state. *Id.*

---

[2] This Court accepts as true and construes in the light most favorable to the plaintiff all well-pled factual allegations in the complaint. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020).

## B. Bolden-Hardge seeks a job transfer to the California State Controller's Office, but on receiving the offer she is told to sign a loyalty oath that conflicts with her faith.

While employed by the FTB in 2017, Bolden-Hardge applied for a higher-paying job as an Associate Governmental Program Analyst for the SCO, a position that involves training and assisting with the agency's payroll. ER-8, 10. Her exam scores, education, and work history qualified her for the job, and the SCO extended her an offer. ER-8.

As part of the onboarding process, however, the SCO insisted that Bolden-Hardge sign a loyalty oath required of most state workers by Article XX, Section 3 of the California Constitution. ER-8. The oath in that section states in relevant part:

> I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic [and] that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California.

But Bolden-Hardge's religious beliefs precluded her from signing the oath. ER-8. The requirement that she swear "faith and allegiance" to the state, for example, violated her belief in not pledging allegiance to the government over God—a core tenet of the Jehovah's Witness faith. *Id*. While the requirement that she swear to "defend . . . against all enemies,

foreign and domestic" violated her belief in not pledging to take up arms in defense of the state or engage in politics—also key teachings of her faith. ER-8–9. In short, signing the oath would compel Bolden-Hardge to state and affirm promises contrary to her religious beliefs. ER-8.

### C. Notwithstanding the SCO's demand, the state and its agencies exempt or accommodate other workers when it comes to swearing the oath.

Most state employees in California take the loyalty oath within 30 days of beginning their employment. Cal. Const. art. XX, § 3; Cal. Gov't Code §§ 18150, 18151. The oath, however, is not always required or insisted on without accommodation.

As Bolden-Hardge alleged in her complaint, for example, in each of her other jobs for the state, the agency that employed her either did not insist on the oath or provided her a religious accommodation to it. ER-7, 10. What's more, she alleged, other state agencies similarly accommodate religious objectors to the oath. ER-10.

Moreover, as Bolden-Hardge proffered to the district court, were an amended complaint necessary she would add that the California State University allows religious objectors on a "case-by-case basis" to append an "explanatory statement" to the oath. *See* ER-45 (citing The California

State University, *The State Loyalty Oath* (Jul. 2011), https://bit.ly/3AOHYGp; Scott Jaschik, *Loyalty Oath Compromise*, Inside Higher Ed (June 3, 2008), https://bit.ly/3DFTMfU). Likewise, the University of California system allows objectors to "'submit an addendum [to the oath], as long as it does not negate the oath,'" and even distributes sample addenda with statements like "'[t]his is not a promise to take up arms in contravention of my religious beliefs,'" or "'I owe allegiance to Jehovah.'" *Id.* (quoting Richard C. Paddock, *Enduring Oath Still Testing Loyalties*, L.A. Times (May 2, 2008), https://lat.ms/3DMBxFC).[3]

Finally, Bolden-Hardge could further allege that non-citizens are exempted from taking the oath. *See Miller v. Bd. of Supervisors of Trinity Cnty.*, 175 Cal. Rptr. 133, 134 (Ct. App. 1981); Cal. Gov't Code §§ 3100–3103; Oath of Allegiance and Declaration of Permission to Work for Persons Employed by the State of California, State of Cal. Dep't of Human Res. (Oct. 2019), https://bit.ly/3p5RCCa. The oath provision also states that "inferior officers and employees . . . may be by law exempted." Cal. Const. art. XX, § 3.

---

[3] If amendment were necessary, Bolden-Hardge could also allege that a Jehovah's Witness employee of the California Department of Food and Agriculture was permitted to take the oath with a clarifying statement.

**D. Consistent with the state's treatment of others, Bolden-Hardge seeks a religious accommodation to the oath.**

As permitted by other state agencies, including agencies where she has worked, Bolden-Hardge asked the SCO for an accommodation that would allow her to obtain the Associate Governmental Program Analyst position without violating her religious beliefs. *See* ER-7, 9–10.

As one option, Bolden-Hardge offered to sign the oath but on the condition that (like employees of California State University and the University of California) she be allowed to attach an addendum stating that she owes allegiance to God first and that she would not take up arms or engage in political affairs, as follows:

> I, Brianna Bolden-Hardge, vow to uphold the Constitutions of the United States and of the State of California while working in my role as an employee of the State Controller's Office. I will be honest and fair in my dealings and neither dishonor the Office by word nor deed. By signing this oath, I understand that I shall not be required to bear arms, engage in violence, nor to participate in political or military affairs. Additionally, I understand that I am not giving up my right to freely exercise my religion, nor am I denouncing my religion by accepting this position.

ER-9.

### E. The SCO rescinds Bolden-Hardge's job offer based on her request for religious accommodation.

After Bolden-Hardge made her request for accommodation, the SCO pushed her start date back, claiming it needed time to review the matter. ER-9. A few days later, however, the SCO rescinded the job offer it had made to Bolden-Hardge, claiming the oath requirement could not be modified and her proposed written addendum constituted a modification. *Id.* In their exchange, the SCO failed to explore any other means of accommodating Bolden-Hardge, insisting instead on the loyalty oath without exception, notation, or addendum. *Id.*

After the SCO rescinded her offer, Bolden-Hardge was forced to return to the FTB in her prior, lower-paying role. ER-10. On her return, the FTB asked Bolden-Hardge to sign the oath but allowed her to include the addendum she had proposed to the SCO. *Id.*

### F. Bolden-Hardge sues, but the district court dismisses her complaint without leave to amend.

Bolden-Hardge sued the SCO and Controller Yee. ER-4–20. In her complaint, she alleged that Defendants violated Title VII and FEHA by refusing her a job instead of accommodating her in the face of a conflict between her religious beliefs and their insistence on the loyalty oath. ER-10–12, 14–15. Bolden-Hardge further alleged that Defendants' approach

13

to the oath violated Title VII because it disparately impacts a class of religious believers in the workplace. ER-13–14. Lastly, Bolden-Hardge alleged that Defendants violated the free-exercise clauses of the federal and state constitutions by imposing a substantial burden on her faith in forcing her to choose between her religious beliefs and a public benefit— namely, a government job—and despite accommodations or exceptions the state otherwise makes to the oath. ER-15–18.

The district court dismissed the complaint without leave to amend in a ruling from the bench. *See* ER-98–113. On the discrimination/non-accommodation claims, the court reasoned there was no "actual conflict between [Bolden-Hardge's] religious beliefs and her job duties" because it was unlikely a payroll employee would need to take up arms. ER-100–01. Further, the court reasoned, the Defendants "properly refused" the addendum that Bolden-Hardge proposed because it "incumbered and compromised [the oath] by [an] injection of an unauthorized potential qualification of its meaning and clarity." ER-104.

The district court then went on to dismiss Bolden-Hardge's Title VII disparate-impact claim for "the same reasons" it rejected her accommodation-based claims. ER-107. And although it did not elaborate

on these "same reasons," the court further faulted Bolden-Hardge for not including "statistical allegations" of impact. ER-107–09.

Lastly, the district court dismissed Bolden-Hardge's free-exercise claims because it said she did "not dispute the validity of the oath itself" or "its general applicability." ER-111. Given this "general applicability" conclusion, the court observed, the SCO's oath policy was not subject to strict scrutiny and was valid under *Employment Division v. Smith*, 494 U.S. 872 (1990). *Id.* In so ruling, the district court deemed "abrogated" the Supreme Court's holding in *Sherbert v. Verner*, 374 U.S. 398 (1963), where the Court held that strict scrutiny applies to government policies which are subject to exemptions. ER-110–11. At no point in its ruling did the district court dispute Bolden-Hardge's allegation of a substantial burden on her religion in violation of the federal and state constitutions. *See* ER-98–113.

In closing, and despite acknowledging the "very, very early stage[]" of the litigation and saying "the case itself is novel," the court found that the issues were largely legal and refused leave to amend. ER-112–13.

This appeal follows.

## SUMMARY OF THE ARGUMENT

This Court reviews the dismissal of a complaint under Rule 12(b)(6) de novo and affirms such dismissal only when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable theory." *Hartmann v. Cal. Dep't of Corr. and Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Because Bolden-Hardge alleged both that her faith prevents her from taking the state loyalty oath—at least without some form of accommodation—and that Defendants revoked her job offer rather than exploring any potential accommodations as other state agencies do, Bolden-Hardge pleaded more than enough facts to support her claims under Title VII, FEHA, and the federal and state constitutions.

First, this Court should revive the Title VII and FEHA claims for disparate treatment based on the need for religious accommodation. Contrary to the district court's ruling, Bolden-Hardge alleged a conflict between her religious objection to the state loyalty oath and Defendants' insistence on it at the price of a job. To the lower court, Bolden-Hardge's beliefs about the oath's impact on her faith were immaterial since she would likely not have to take up arms in the SCO job and, in its view, state law forbids the addendum she proposed about her loyalty to God.

The defense conflict, however, is not about whether the state would in fact call on Bolden-Hardge to fight (or engage in politics), but whether her faith permits her to presently swear an oath to "defend . . . against all enemies," even if the state declines to make good on that promise—a matter on which a secular court must defer. Moreover, the "faith and allegiance" conflict is apparent from Defendants' rescission of the job offer over it. And in any case, Defendants' duty to accommodate is not limited to the addendum Bolden-Hardge offered, but concerns the viability of any option—a matter that cannot be resolved on the pleadings. Finally, the state oath law does not forbid accommodation, and Title VII preempts that law regardless.

Second, this Court should also restore Bolden-Hardge's disparate-impact claim under Title VII. For starters, a plaintiff is not required at the pleadings stage to cite statistical proof of a disparate impact. All that is required, rather, is a plausible claim that the policy has such an impact—which Bolden-Hardge put forth in claiming that Defendants' approach to the oath excludes from employment those of certain shared religious beliefs (i.e., religious minorities who object to the oath). The impact is plain where Defendants' approach excludes 100% of this class.

Third, the free-exercise claims must also be revived, because Bolden-Hardge's complaint indisputably alleges that Defendants' oath policy imposed a substantial burden on her faith, and because the accommodations and exceptions the state and its agencies make in other cases are enough to trigger strict scrutiny here. In the alternative, Defendants' approach also triggers strict scrutiny by implicating other constitutional rights. These issues cannot be resolved on the pleadings.

Finally, were this Court to conclude that the complaint is defective in alleging any of its claims, it should at least reverse and remand to permit Bolden-Hardge the chance to cure any defect on amendment.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). And in conducting such review, a dismissal is affirmed "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann*, 707 F.3d at 1122. That is, this Court ascertains whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Additionally, this Court reviews for abuse of discretion a district court's decision to deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Notably, however, "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). After all, Rule 15(a) "provides that a trial court shall grant leave to amend 'when justice so requires,' [and t]he Supreme Court has stated that 'this mandate is to be heeded.'" *Lopez*, 203 F.3d at 1130 (quoting Fed. R. Civ. P. 15(a) and *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ARGUMENT

### I. THIS COURT SHOULD RESTORE BOLDEN-HARDGE'S CLAIMS FOR RELIGIOUS DISCRIMINATION AND NON-ACCOMMODATION UNDER TITLE VII AND FEHA.

#### A. Title VII and FEHA outlaw as a form of discrimination an employer's refusal of a job based on the need for religious accommodation absent proof of undue hardship.

Title VII and FEHA forbid an employer from denying a job to an applicant because of her religion. 42 U.S.C. § 2000e-2(a)(1); Cal. Gov't Code § 12940.

Importantly, however, Title VII defines "religion" to include not just religious status but "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [the] religious observance or practice without undue hardship." 42 U.S.C. § 2000e(j). And FEHA similarly forbids an employer from refusing to hire someone not just because of her religious status but also "because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." Cal. Gov't Code § 12940(*l*)(1). In short, Title VII and FEHA "require[] otherwise-neutral policies to give way to the need for an accommodation." *Abercrombie*, 575 U.S. at 775.

For all relevant purposes, courts assess Title VII and FEHA claims for discrimination in this religious-accommodation context using a two-

part framework. *Opuku-Boateng*, 95 F.3d. at 1467; *Soldinger v. Nw. Airlines*, 58 Cal. Rptr. 2d 747, 762 (Ct. App. 1996).[4]

First, the plaintiff must establish a prima facie case of religious discrimination/non-accommodation. At the pleadings stage, she can do this by alleging that (1) she holds a bona fide religious belief, the practice of which conflicted with an employment requirement; (2) the employer took adverse action—including the refusal to hire—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's need for religious accommodation was a motivating factor in the employer's decision. *See* Hon. Ming W. Chin et al., California Practice Guide: Employment Litigation ¶ 7:620 (The Rutter Group ed., 2020); *see also Abercrombie*, 575 U.S. at 775; *Heller v. EBB Auto Co.*, 8 F.3d 1433,

---

[4] "Although the wording of [T]itle VII differs in some particulars from the wording of FEHA, the antidiscriminatory objectives and overriding public policy purposes of the two acts are identical." *Beyda v. City of Los Angeles*, 76 Cal. Rptr. 2d 547, 550 (Ct. App. 1998). Where analogous, therefore, "California courts apply the Title VII framework to claims brought under FEHA." *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007); *accord Cook v. Lindsay Olive Growers*, 911 F.2d 233, 241 (9th Cir. 1990).

1438 (9th Cir. 1993); *Cal. Fair Emp. & Hous. Comm'n v. Gemini Alum. Corp.*, 418 Cal. Rptr. 3d 906, 910 (Ct. App. 2004).[5]

Notably, "[t]he prima facie case does not include a showing that the employee made any efforts to compromise his or her religious beliefs or practices before seeking an accommodation from the employer." *Heller*, 8 F.3d at 1438. Moreover, a plaintiff's religious beliefs need only be sincere to be protected; courts may not examine their truth or reasonableness, or whether the employee correctly understood her faith or articulated her beliefs. *See Thomas*, 450 U.S. at 716–18 (emphasizing limits of secular court evaluation of religious conflicts in First Amendment context).

As the Supreme Court has stressed, "it is not for us to say" whether the line drawn by a religious claimant is an "unreasonable one;" rather, courts determine only whether that line arises from an "honest conviction." *Id.* at 715; *accord Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724–26 (2014) (refusing to second-guess under the Religious

---

[5] In *Abercrombie*, the Supreme Court rejected under Title VII a further requirement that the employer have actual knowledge of the plaintiff's need for accommodation, holding instead that Title VII liability arises where the employer's motive was to avoid accommodation. 575 U.S. at 774. Because there is no dispute that the Defendants knew about Bolden-Hardge's need for accommodation, this arguable distinction between the prima facie requirements of Title VII and FEHA is immaterial here.

Freedom Restoration Act (RFRA) a plaintiff's gauging of the line they believed they could not cross).

Second, once the employee makes out a prima facie case (and almost always after the pleadings stage), the burden shifts to the employer to prove that it "negotiated with the employee in an effort reasonably to accommodate" her beliefs. *Opuku-Boateng*, 95 F.3d at 1467; *see also* Cal. Gov't Code § 12940(*l*)(1) (requiring employer to "explore[] any available reasonable alternative means of accommodating"). And if, in the course of this negotiation, the employer offers no alternative, it "must accept the employee's proposal or demonstrate that the proposal would cause [it] undue hardship." *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988). Put another way, "[o]nly if the employer can show that *no accommodation would be possible* without undue hardship is it excused from taking the necessary steps to accommodate." *Opuku-Boateng*, 95 F.3d at 1467 (emphasis added).

As for the affirmative defense of undue hardship, it is not enough for the employer to show that one option would cause such hardship. Rather, it must prove that "the various potential accommodations would all have resulted in undue hardship." *Id.* at 1469; *accord Soldinger*, 58

Cal. Rptr. 2d at 764. What's more, a showing of undue hardship "cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of 'actual imposition on co-workers or disruption of the work routine.'" *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir. 1981) (quoting *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 406–07 (9th Cir 1978)). As such an affirmative defense, undue hardship cannot serve as the basis for dismissal unless there is some "obvious bar to securing relief on *the face of the complaint.*" *ASARCO, L.L.C. v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (emphasis added).

In making an undue-hardship showing, the employer might ultimately be able to satisfy that defense where accommodating the plaintiff would cause it to violate some other provision of law—say, a federal statute requiring the employee to provide a social-security number. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 831 (9th Cir. 1999). But the employer must still prove that such liability would in fact arise under that collateral law for it to prevail on this basis. *See, e.g., Bhatia v. Chevron U.S.A. Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984) (ruling for employer, but where it proved that the only

accommodation option would in fact expose it to liability for violating workplace safety laws).

Regardless, when it comes to violations of Title VII in particular, Section 708 of that statute makes clear that reliance on a supposed dictate of *state* law is no excuse for illegal discrimination:

> Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, *other than any such law which purports to require or permit the doing of an act which would be an unlawful employment practice under this title*.

42 U.S.C. § 2000e-7 (emphasis added); *see also Malabed v. N. Slope Borough*, 335 F.3d 864, 870 (9th Cir. 2003) (observing that, pursuant to Section 708, Title VII trumps state law that would "permit[] acts that would be unlawful employment practices under Title VII"); *Rosenfeld v. S. Pac. Co.*, 444 F.2d 1219, 1226 (9th Cir. 1971) (same).

Just as a state statute that allows for gender discrimination is no defense to Title VII liability, neither is one that would cause a religious believer to lose her job absent a needed accommodation. *See Abercrombie*, 575 U.S. at 775 (stressing that non-accommodation of religion is a form of illegal disparate treatment under Title VII). For this reason, and as detailed in the following section, the EEOC has insisted that Title VII

preempts the unaccommodated imposition of state oath laws on religious objectors in particular as part of its "consistent[]" understanding of Section 708. EEOC Decision No. 85-13, 1985 WL 32782, at *3.[6]

### B. Religious objections to loyalty oaths in particular trigger protection under Title VII, FEHA, and related laws.

As Bolden-Hardge pointed out in her complaint, the struggle for Jehovah's Witnesses to abide by their sincerely held religious beliefs while remaining full members of American society is a well-known story—perhaps most notably in their objections to pledges of loyalty to the government. *See* ER-5–6. Fortunately—if not always inevitably—the views of this religious minority on the issue have come to be accepted and accommodated in the law generally and employment law in particular.

The most prominent example of such accommodation, of course, is the Supreme Court's landmark decision in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943). In *Barnette*, the Court struck down under the First Amendment a rule compelling Jehovah's Witness

---

[6] In *Sutton*, this Court referenced an employer's need to comply with "federal or state law" as an undue-hardship defense. 192 F.2d at 830. But this reference to *state* law is dicta, where the dispute in *Sutton* involved compliance with federal law—social-security reporting—and Section 708 expressly preempts conflicting state law.

children in public schools to salute the flag and pledge allegiance. As the Court famously observed, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id*. at 642.

Relying on *Barnette*, this Court therefore concluded in *Lawson v. Washington* that there is an actionable conflict under Title VII between government loyalty oaths and Jehovah's Witness beliefs that they cannot swear allegiance to the state over God. 296 F.3d at 804. In *Lawson*, the plaintiff applied to be a state trooper but could "only swear allegiance to his faith and to God" and, accordingly, he refused to take a government loyalty oath mandated by Washington law. *Id*. at 802. And although the court affirmed summary judgment against the plaintiff after agreeing he had otherwise voluntarily resigned from the police academy, it took for granted that, as a Jehovah's Witness, the plaintiff's beliefs conflicted with the requirement that he "salute the flag and . . . swear his allegiance to the United States and the State of Washington." *Id*. at 804–06.

The EEOC has reached the same conclusion. In Decision No. 85-13, an applicant refused to sign an oath to work for a municipal agency based

on her beliefs as a Jehovah's Witness against swearing to language she feared would commit her to support laws that "conflict with God's laws." 1985 WL 32782, at *1. As a possible accommodation, the applicant proposed taking a form of the oath stating that she would support state and federal law as long as there was no such discrepancy. *Id.* Applying Title VII, the EEOC found an actionable conflict and ruled that the employer could not show undue hardship. *Id.* at *2–3. As noted above, the agency further stressed that, in keeping with how it has "consistently" interpreted Section 708, Title VII overrides a state oath law that proscribes modifications of the oath's terms. *Id.* at *3.

Similarly, though not in a Title VII dispute, the district court in *Bessard v. California Community Colleges*, 867 F.Supp. 1454 (E.D. Cal. 1994), found that the California oath at issue in this case "substantially burdened" the religious beliefs of Jehovah's Witness job applicants under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb. Specifically, the court found that an actionable burden arose where the plaintiffs' "religion does not permit them to take an oath in which they must swear faith or allegiance to any entity other than God"—and the agency would not otherwise allow the signing of an alternative oath along

those lines. *Bessard*, 867 F. Supp. at 1457, 1462. Or, as the *Bessard* court put it, "requiring [plaintiffs] to agree to take an oath that violates their religious tenets as a condition to being considered for public employment places an undue burden on their right of free exercise." *Id*. at 1463.

Even California's chief executive has agreed. As then-Governor Schwarzenegger stated in vetoing as "unnecessary" a bill that would have created an express exemption to the California loyalty oath, "[e]xisting law already requires public employers, including the State of California, to accommodate an employee whose sincerely held religious beliefs conflict with an employment requirement." Governor's Veto Message for S.B. 115, 2009–10 Cal. Leg., Reg. Sess. (2009). The "existing law" he referred to was no doubt the religious-accommodation protections in FEHA and Title VII. This subsequent history confirms not only that the loyalty oath has been understood to conflict with the beliefs of Jehovah's Witnesses and those of other faiths with similar beliefs (e.g., Quakers and Mennonites), but that Title VII and FEHA provide a safety valve to ensure the oath does not trample those religious beliefs.

**C. Bolden-Hardge adequately pled that, in refusing to hire her due to a conflict between her religious beliefs and the oath, Defendants violated Title VII and FEHA.**

**1. Bolden-Hardge pled a prima facie case.**

In light of the foregoing legal requirements and precedent, Bolden-Hardge has more than sufficiently alleged a prima facie case under Title VII and FEHA for religious discrimination based on her need for religious accommodation. What's more, Defendants cannot win on the pleadings based on undue hardship. In other words, Bolden-Hardge has pled a "cognizable legal theory or sufficient facts to support a cognizable legal theory" to defeat the motion to dismiss. *Hartmann*, 707 F.3d at 1122.

For starters, Defendants nowhere disputed in their motion or papers that they took adverse action against Bolden-Hardge in rescinding her job offer to work at the SCO and that this rescission was due to Bolden-Hardge's refusal to sign the loyalty oath on account of her religious beliefs. *See* ER-12. Accordingly, the second and third elements of a prima facie case described above are indisputably met: adverse action motivated by the refusal to accommodate a religious belief. *See* Chin et al., *supra*, at ¶ 7:620 (outlining prima facie case elements under Title VII and FEHA). And although Defendants also failed to contest in their motion to dismiss the first prima facie element concerning a conflict

between a sincerely held religious belief and a job requirement, Bolden-Hardge pled that element as well. *See id.* (describing conflict element of prima facie case); ER-26 (motion failed to dispute prima facie case).[7]

Bolden-Hardge alleged that the oath, which the SCO required her to take on pain of losing the job, would have required her to swear "'faith and allegiance'" to the state and to "'defend [it] . . . against all enemies.'" ER-8; Cal. Const. art. XX, § 3. But, she alleged, her beliefs as a Jehovah's Witness prevent her from "swearing primary allegiance to any human government" or "swearing to engage in political or military activity[,] including taking up of arms." ER-7. In accordance with her religious beliefs, therefore, were Bolden-Hardge to take the oath as Defendants required, she alleged that she would be "put[ting] her allegiance to the government over her allegiance to God and likewise [be] commit[ting] her[self] to take up arms in defense of the state, all in violation of her sincerely held religious beliefs." ER-8. Put another way, Bolden-Hardge alleged that "signing the oath would compel [her] to affirmatively state and affirm something contrary to her faith." *Id.*

---

[7] It was not until Defendants' reply in support of their motion that they disputed a prima facie case under Title VII. *See* ER-26–37, 58–59.

As articulated by the courts in *Barnette*, *Lawson*, and *Bessard*, the EEOC in Decision No. 85-13, and the Governor in his 2009 Veto, Bolden-Hardge at least pled an actionable conflict with the state loyalty oath when it comes to her allegiance to God. *See Barnette*, 319 U.S. at 642 (striking down allegiance pledge for plaintiffs under First Amendment); *Lawson*, 296 F.3d at 804 (holding that a conflict under Title VII arose between a state loyalty oath and Jehovah's Witness's inability to swear allegiance to the state over God); *Bessard*, 867 F. Supp. at 1457, 1462 (finding the California oath substantially burdened Jehovah's Witnesses who could not "swear faith or allegiance to any entity other than God"); EEOC Decision No. 85-13, 1985 WL 32782, at *1–3 (finding conflict under Title VII for Jehovah's Witness who could not pledge to support laws that "conflict with God's laws"); Governor's Veto Message, *supra* (insisting that the state's oath law is subject to religious accommodation).

If anything, Bolden-Hardge's claims are even stronger than the ones in *Lawson* and *Bessard* because she alleged a further actionable conflict between the oath's requirement that she "defend" the state against its "enemies" and her beliefs against not pledging to take up arms or engage in politics—a line she is more than entitled to draw under the

law. *See Thomas*, 450 U.S. at 715 (emphasizing that, for purposes of religious-freedom protection, "it is not for [courts] to say" whether the line drawn by a claimant is an "unreasonable one").

### 2. Defendants cannot prevail on the pleadings based on the affirmative defense of undue hardship.

Having thus pled a prima facie case, the only way for Defendants to prevail on the pleadings would be if it is undisputed "on the face of the complaint" that they meet the affirmative defense of having "negotiated with [Bolden-Hardge] in an effort reasonably to accommodate" her beliefs to the limit of an "undue hardship." *ASARCO*, 765 F.3d at 1004; *Opuku-Boateng*, 95 F.3d at 1467. But nothing in Bolden-Hardge's complaint comes close to conceding either point. Rather, she pled that Defendants failed to negotiate *any* solution—through her proposed addendum or otherwise—and that they could have accommodated her without difficulty—just as other agencies have done. ER-12.

In response, Defendants argued below only that making a religious accommodation in connection with the state oath law would violate that law and, as such, pose a per se undue hardship. *See* ER-34 (contending that "plaintiff's accommodation request to modify the oath would have required the [SCO] to violate the law by disregarding a constitutional and

statutory requirement that it administer the oath in the California Constitution—and no other oath—to its employees").

In support of their argument that state law forbids any religious accommodation, Defendants cited the state constitution's oath provision and the court's rejection of an addendum that the plaintiff insisted on in *Smith v. County Engineer of San Diego County*, 72 Cal. Rptr. 501 (Ct. App. 1968). *See* ER-30–32. Then, in arguing it would create a per se undue hardship to (supposedly) violate the constitution's oath provision, Defendants cited four cases where courts did not require accommodations that would violate certain other laws: *Sutton*, 192 F.3d 826; *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000); *Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013); and *Bhatia*, 734 F.2d 1382. *See* ER-34, 62–63.

But the state constitution's oath provision provides only that the oath is a job requirement; it nowhere forbids accommodation. Rather, the constitutional text provides that "no other oath, declaration, or test shall be *required*." Cal. Const. art. XX, § 3 (emphasis added); *see also* Cal. Gov't Code §§ 18150, 18151 (speaking only of "required" oath). According to its text, then, the oath law is silent on what other text, accommodation, or exception the employee might be *allowed*. *Cf. S.F. Police Officers Ass'n v.*

34

*San Francisco*, 138 Cal. Rptr. 755, 758 (Ct. App. 1977) (only prohibiting the employer from imposing additional oaths). Bolden-Hardge's claims cannot therefore be defeated on the pleadings as a textual matter.

Moreover, the California Court of Appeal held in *Smith v. County Engineer* that the plaintiff there failed to satisfy the oath requirement by insisting on a statement that "declar[ed his] supreme allegiance to the Lord Jesus Christ Whom Almighty God has appointed ruler of Nations, and express[ed his] dissent from the failure of the Constitution to recognize Christ and to acknowledge the Divine institution of civil government." 72 Cal. Rptr. at 508. But nowhere in *Smith* did the court address an accommodation duty that might be independently required under Title VII or FEHA, or under what circumstances; only whether the addendum there met the four corners of the oath requirement.

Additionally, although the court in *Smith* rejected the modification proposed there, it indicated that if the proposed text were "innocuous," "expository," or "compatible," that may well have been acceptable. *Id.* at 508. It cannot therefore be decided on the pleadings in any event that Bolden-Hardge's request for a reasonable accommodation—through the addendum she offered or another route the Defendants might choose—

could never have led to an "innocuous," "expository," "compatible," or some other resolution to satisfy Title VII and FEHA in light of *Smith* (assuming *Smith* applies). Nor did Defendants entertain the possibility through the interactive process Title VII and FEHA demand.[8]

As for *Sutton*, *Seaworth*, *Tagore*, and *Bhatia*, these cases are all distinguishable for the related reason that, unlike here, the legal risk to the employers there was unavoidable or at least determined after discovery. *See Sutton*, 192 F.3d 826 (hardship found due to unequivocal social-security reporting requirement); *Seaworth*, 203 F.3d 1056 (same); *Tagore*, 735 F.3d 324 (declaring that a security risk was unavoidable on summary-judgment record); *Bhatia*, 734 F.2d 1382 (declaring safety risk unavoidable on summary-judgment record).

---

[8] Although the addendum Bolden-Hardge proposed was one option, Title VII and FEHA required Defendants to prove that all reasonable options for accommodation would pose undue hardship. *See Opuku-Boateng*, 95 F.3d at 1469 (holding employer must prove all potential accommodations would cause undue hardship); *Soldinger*, 58 Cal. Rptr. 2d at 762 (same). To the extent *Smith* affects Bolden-Hardge's complaint at all, therefore, it must be undisputed that *Smith* forbids not only the text she offered but any option that would resolve the conflict between her religious beliefs and the oath. *See Opuku-Boateng*, 95 F.3d at 1467 (defining reasonable accommodation as one that "eliminate[s] the religious conflict"). This matter cannot be resolved on the pleadings here.

Again, not only does the text of the oath law here nowhere forbid accommodation, *Smith* did not involve accommodation under Title VII or FEHA. Moreover, Bolden-Hardge's allegations—now or on amendment— about the accommodations that other agencies provide shows that their unavailability is not a foregone conclusion. *See* ER-7, 10, 45. At the very least, it cannot be decided on the pleadings that the Defendants explored all options for accommodating Bolden-Hardge and found them wanting— as the law requires. *See Balint v. Carson City*, 180 F.3d 1047, 1051 (9th Cir. 1999) (requiring employer to "attempt[] to reasonably accommodate" or prove "any accommodation would impose an undue hardship").

Furthermore, unlike the employers in *Sutton*, *Seaworth*, *Tagore*, and *Bhatia*, the employer being challenged under Title VII here is a state agency. *Compare* ER-6, *with Sutton*, 192 F.3d 826 (non-profit hospital); *Seaworth*, 203 F.3d 1056 (auto-body shop); *Tagore*, 735 F.3d 324 (federal agency); *Bhatia*, 734 F.2d 1382 (private energy company). It is also, as alleged by Bolden-Hardge, a state agency whose approach to religious accommodation conflicts with other agencies. *See* ER-10.

These dynamics justify a post-pleadings inquiry under federal civil-rights law into the "magnitude as well as the fact of hardship." *Tooley*,

648 F.2d at 1243. Otherwise, Section 708's preemption of conflicting state laws would be meaningless when it comes to such challenges of religious discrimination based on a failure to accommodate. *See Malabed*, 335 F.3d at 870 (Section 708 exemption concerns conflicting state laws); *Rosenfeld*, 444 F.2d at 1226 (same); *Abercrombie*, 575 U.S. at 775 (stressing that non-accommodation is a form of illegal discrimination under Title VII).

Lastly, and regardless of the legality of a religious accommodation under the state law here—which is again disputed—the collateral-law hardship exceptions that the courts applied in *Sutton*, *Seaworth*, and *Tagore* concerned only conflicting *federal* laws. *See Sutton*, 192 F.3d at 829–30 (social-security reporting); *Seaworth*, 203 F.3d at 1056–57 (same); *Tagore*, 735 F.3d at 326–27 (federal-building security rules). Again, Section 708 of Title VII means that state law must yield to its religious-accommodation provisions. *See* EEOC Decision No. 85-13, 1985 WL 32782, at *3 (ruling that oath law must yield to Title VII).

### D. The district court erred in determining on the pleadings that there was no conflict between Bolden-Hardge's faith and a job requirement.

In dismissing Bolden-Hardge's discrimination claims under Title VII and FEHA based on the failure to accommodate, the district court

nowhere questioned that Bolden-Hardge alleged the elements of a prima facie case concerning the sincerity of her religious beliefs or that she suffered an adverse action on account of those beliefs. *See generally* ER-98–109. Nor did the court determine that the Defendants should prevail on hardship grounds. *See id*. All rightly so, for the reasons above.

Rather, the court concluded that there was no actionable "conflict" between Bolden-Hardge's religious beliefs and a job requirement since her "job duties" at the SCO would not have included taking up arms. ER-101. Moreover, the court decided, the rejection of the addendum in *Smith v. County Engineer* meant that Bolden-Hardge's proposed addendum was likewise a "gratuitous injection of religious belief" in the form of "an unauthorized potential qualification of [the oath's] meaning and clarity," and not an actionable conflict. ER-104. Finally, the district court opined, though did not find, Section 708 of Title VII does not preempt the state oath law. ER-105–06. The court is wrong on all three points.

*First*, the district court erred when it comes to a conflict between a religious belief and job requirement. Indeed, there were at least two stark conflicts. On one side, Defendants required Bolden-Hardge to take the oath at the price of losing the job. *See* ER-8, 12. On the other side, Bolden-

Hardge refused to sign the oath because it would violate her religious beliefs against (1) making a pledge that would commit her to take up arms or engage in politics; and (2) pledging loyalty to anyone above God. ER-12. In short, Bolden-Hardge's job was made contingent on "signing [an] oath [that] would compel [her] to affirmatively state and affirm something contrary to her faith." ER-8; *see also* ER-12.

As for the defense conflict, the lower court misstated it as involving the "'unlikely'" prospect of taking up arms in the SCO job. ER-101. The conflict, however, was not based on the likelihood of taking up arms in a given assignment. Rather, it concerned Bolden-Hardge having to presently pledge on pain of losing the job that she will "'defend'" the state "'against all enemies, foreign and domestic.'" ER-8. And this language, absent accommodation, would "compel Bolden-Hardge to affirmatively state and affirm something contrary to her faith." *Id.*; *see also Barnette*, 319 U.S. at 642 (citizens cannot be forced "to confess" orthodoxy by "act" or by "word"). Whatever disagreement a court might have on the line that Bolden-Hardge drew, it must defer to her on it. *See Thomas*, 450 U.S. at

715 (stressing "it is not for [courts] to say" whether the line a believer draws is an "unreasonable one").[9]

As for the "faith and allegiance" conflict, the lower court's analysis is muddled. But one can infer it thought that Bolden-Hardge's beliefs about her "'first duty to God'"—reflected in the addendum she offered— do not conflict with a job requirement but are, as the court put it, a mere "gratuitous injection" of religion. ER-103–04. Again, though, courts should not second-guess a believer's scruples—here, in balking at pledging loyalty to the state. *See Thomas*, 450 U.S. at 715 (deferring to believer on the line he drew). Like other Jehovah's Witnesses and those with similar beliefs, Bolden-Hardge's faith forbids her from unconditionally swearing faith and allegiance to the state.

Moreover, although the district court refused to find an actionable conflict when it came to Bolden-Hardge's loyalty to God and government, it in fact noted in its ruling that the addendum Bolden-Hardge proposed

---

[9] It could also be pled on amendment that, since the oath is taken only on entry into civil service and not repeated on transfers, the prospects of Bolden-Hardge in fact having to take up arms cannot be determined by the SCO job alone. *See* Oath of Allegiance and Declaration of Permission to Work for Persons Employed by the State of California, *supra*.

"disclaims the oath" because, *inter alia*, it "affirms her 'first duty to God,' and not the state." ER-103–04. This seems a conflict by any measure.

Furthermore, and in any event, a Title VII or FEHA conflict here is not limited to what Bolden-Hardge offered as an alternative. Rather, it chiefly concerns her refusal to swear the oath and Defendants' insistence on it as a job requirement without accommodation. *See Heller*, 8 F.3d at 1438 (holding "the prima facie case does *not* include a showing that the employee made any efforts to compromise his or her religious beliefs"). Bolden-Hardge's proposal is not on trial here, but Defendants' decision to rescind the SCO job offer rather than accommodate her in any way.

*Second*, the district court erred in relying on *Smith v. County Engineer* in finding that there is no actionable conflict because Bolden-Hardge's addendum was "an unauthorized potential qualification of [the oath's] meaning and clarity." ER-104. Again, *Smith* did not concern Title VII or FEHA liability, but only whether the addendum the plaintiff unilaterally inserted there had satisfied the oath law. *See generally* 72 Cal. Rptr. 501. *Smith* nowhere decided whether accommodation would be required under Title VII or FEHA, through an addendum or otherwise.

Once more, the central issue is not what Bolden-Hardge proposed as an option but Defendants' refusal to explore or offer any accommodation.

Additionally, and as described in the previous section, even if a straight-on comparison to the addendum in *Smith* were appropriate, it cannot be resolved on the pleadings whether Bolden-Hardge's offer was "innocuous," "expository," or "compatible" with the oath—especially where other agencies allow similar addenda. *See id.* at 508.

*Third*, on the preemption point and as also described above, it remains disputed whether Bolden-Hardge's request for accommodation was precluded by the state oath law—either as a textual matter or as a factual matter under *Smith*—and Section 708 displaces conflicting state law regardless.

Again, the text of the oath law nowhere precludes accommodation; *Smith* fails to address accommodation under Title VII or FEHA and notes certain addenda might be permissible; and other state agencies allow the sort of alternative Bolden-Hardge proposed. *See* Cal. Const. art. XX, § 3; Cal. Gov't Code §§ 18150–18151; *Smith*, 72 Cal. Rptr. at 508; ER-10. At a minimum, though, Title VII preempts discriminatory state laws. 42 U.S.C. § 2000e-7; EEOC Decision No. 85-13, 1985 WL 32782, at *3.

Perhaps the district court misunderstood that, under Title VII, an employer's refusal to accommodate an applicant's religious practices is just as illegal a form of discrimination as one based on religious status—as the Supreme Court made clear in *Abercrombie*, 575 U.S. at 775. No matter the reason for the court's error, Title VII applies.

*Finally*, if for some reason Bolden-Hardge must allege further the conflicts at stake or more facts concerning Defendants' failure to negotiate or accommodate—including, for example, more detail on her religious beliefs, the impact of the oath on them, or steps or options Defendants could have pursued—she continues to stand ready to do so by amendment. *See Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (emphasizing leave to amend should be given with "extreme liberality" (internal quotation marks omitted)).

## II. THIS COURT SHOULD RESTORE BOLDEN-HARDGE'S DISPARATE-IMPACT CLAIM UNDER TITLE VII.

### A. Title VII forbids employer practices that have a disparate impact on religious practitioners without justification.

Title VII forbids an employer from insisting on an "employment practice that causes a disparate impact on the basis of . . . religion" unless it can show that the practice "is job related . . . and consistent with

business necessity," or that there was no less-restrictive practice to serve its supposed needs. 42 U.S.C. § 2000e-2(k)(1)(A); *see also id*. at § 2000e-2(a)(2). Put another way, "disparate impact" claims "involve employment practices that are facially neutral in their treatment of different groups but in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon v. Hernandez*, 540 U.S. 44, 52 (2003) (quotation marks omitted).

To make out a prima facie case of disparate impact, a plaintiff must (1) identify a facially neutral employer practice; (2) establish a significant discriminatory impact on a protected class of which plaintiff is a member; and (3) show that the identified practice causes the impact. *Hemmings v. Tidyman's, Inc*., 285 F.3d 1174, 1190 (9th Cir. 2002); *accord Paige v. California*, 291 F.3d 1141, 1144–45 (9th Cir. 2002). Once the prima facie case is established, the burden shifts to the employer to "demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i).

At the pleadings stage, a plaintiff need only allege that a practice caused a disparate impact on a protected class. *Lee v. Hertz Corp*., 330 F.R.D. 557, 561 (N.D. Cal. 2019). And to help assess whether a plaintiff

has made out such a claim of disparate impact, courts look to the EEOC's "four-fifths" ratio as a "rule of thumb." *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002); *see also* 29 C.F.R. § 1607.4(D) (2001) (explaining the four-fifths rule). Under that guideline, a facially neutral policy has a disparate impact if less than 4/5ths of a protected class can satisfy that policy relative to the group with the highest rate. *Stout*, 276 F.3d at 1124.

Notably, statistics are not required at the pleadings stage. *See*, *e.g.*, *Hung Ping Wang v. Hoffman*, 694 F.2d 1146, 1149–50 (9th Cir. 1982) (concluding that a promotion system's subjectivity, with facial indicia of disparate impact, was enough to allow case to proceed); *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1023 (N.D. Cal. 2018) (finding adequate the plaintiffs' allegations of an arbitrary and subjective promotion policy). Even beyond the pleadings, moreover, the "usefulness" of statistics "depends on all of the surrounding facts and circumstances. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977).

In fact, where it is clear from the face of the challenged policy that a protected group will be disparately impacted, statistics are unnecessary at any stage. *See Lynch v. Freeman*, 817 F.2d 380, 387–88 (6th Cir. 1987) ("The district court also correctly ruled that the plaintiff was not required

to prove her case by statistics. While Title VII plaintiffs may be able to prove some disparate impact cases by statistics, that is not the only avenue available."). Where a policy excludes a class on a wholesale basis, for example, the impact is zero to one. *See Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996) (holding that a prima facie case of disparate impact can "certainly" be proven without statistics where "all or substantially all" of a protected class is affected); *Muhammad v. N.Y.C. Transit Auth.*, 52 F. Supp. 3d 468, 486 (E.D.N.Y. 2014) (finding no statistics required where only Muslims affected by headwear policy).

Finally, even if the practice that causes the disparate impact is required by state law, the employer must prove actual business necessity to prevail and cannot rely on such law as a per se defense. *See Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977) (rejecting reliance on state law as per se defense in disparate-impact cases, insisting that the test is the same for private and public employers alike: actual business need). Because such a fact-dependent defense is almost never apparent on the face of a complaint, pleading a prima facie case will defeat dismissal.

## B. Bolden-Hardge pled an impact claim based on the effect of Defendants' oath policy on religious believers.

Bolden-Hardge alleged a prima facie case of disparate impact by pleading that (1) she is "a devout Jehovah's Witness—a religion with adherents across the globe, including an estimated 1.3 million in the United States;" (2) "[c]onsistent with the religious beliefs of other Jehovah's Witnesses, [she] has come to sincerely believe that her faith forbids her from . . . swearing primary allegiance to any human government and, correspondingly, . . . swearing to engage in political or military activity—including taking up of arms;" and (3) Defendants' practice of insisting on the loyalty oath "without exception, notation, or addendum" necessarily excludes her "and any similarly situated religious individual who shares her religious beliefs" by forcing them to "abandon . . . religious objections or forgo employment with the state." ER-7, 13.

This is more than enough. Namely, Bolden-Hardge (1) identified a facially neutral practice in Defendants' insistence on the oath "without exception, notation, or addendum;" (2) alleged that Defendants' practice categorically excludes, and therefore has a significantly discriminatory impact on, a class of religious believers who object to the oath—including, but not limited to, Bolden-Hardge and other Jehovah's Witnesses—

relative to all of those the SCO employs who, based on the oath policy it insists on, swore the oath under that policy; and (3) alleged that the exclusion of religious objectors is necessarily caused by Defendants' oath practice. *See Hemmings*, 285 F.3d at 1190 (laying out each of these three prima-facie requirements for a disparate-impact claim).

### C. The district court erroneously dismissed the disparate-impact claim for the "same reasons" as the disparate-treatment claim, and for lack of statistics.

The lower court purported to dismiss Bolden-Hardge's disparate-impact claim "for the same reasons" it rejected her claims for disparate treatment based on the need for religious accommodation. ER-107. The court did not elaborate on these "same reasons." But they are presumably that, in its view, there is no prima facie case based on the lack of a conflict with a job requirement; the addendum Bolden-Hardge offered was precluded by the state oath law; and Title VII does not preempt such law. *See* ER-101–06. The court also faulted Bolden-Hardge's pleading of the impact claim as being "conclusory" and lacking statistics akin to those alleged in *Garcia v. Spun Steak Co.*, 998 F.2d 1480 (9th Cir. 1993), and *Lee*, 330 F.R.D. 557. ER-107–09. The district court is wrong again.

Regarding the prima-facie case, the elements of a disparate-impact claim—a neutral policy that causes a significant adverse effect on a class of which the plaintiff is a part—are distinct from a disparate-treatment claim based on the failure to accommodate—a conflict between a sincere religious belief and job requirement resulting in adverse action. *Compare Hemmings*, 285 F.3d at 1190 (outlining prima facie impact claim), *with Heller*, 8 F.3d at 1438 (describing elements of disparate-treatment claim based on a failure to accommodate). In the religion context, there can be overlap between the two theories since religious beliefs are typically acted upon. But unlike the accommodation theory, disparate-impact theory in this context concerns not the conflict with the religious belief as such but the effect of the employer's policy on a class of people who share certain religious beliefs. *See Abercrombie*, 575 U.S. at 774 (similarly distinguishing the theories).

Additionally, the other "same reasons" the district court alludes to in dismissing the impact claim are likewise insufficient. As with the accommodation claims, the issue is not the addendum Bolden-Hardge offered but the actions of Defendants. When it comes to disparate impact specifically, Bolden-Hardge's claim concerns not any one addendum but

the effect of Defendants' insistence on the oath "without exception, notation, or addendum" on a class of religious believers who object to the oath. ER-9. As for preemption, not only does Section 708 again apply, but the Supreme Court has made clear that, when it comes to impact claims in particular, reliance on state law is not a per se defense. *See Dothard*, 433 U.S. at 331 n.14 (insisting business necessity must be shown to defeat a disparate-impact claim).

Turning then to the district court's other basis for dismissing the disparate-impact claim—supposed "conclusory" allegations of an adverse impact with no statistics—its analysis on that score is also incorrect. As outlined above, Bolden-Hardge alleged precisely what the law requires: that she and similarly situated religious believers cannot work for the SCO due to its oath policy, while those who do not share those beliefs can. ER-13; *Hemmings*, 285 F.3d at 1190. Given the wholesale nature of the SCO's exclusion of religious objectors to the oath, a disparate impact is alleged "on its face" and in "certain" terms. *See Dothard*, 433 U.S. at 331 n.14; *Garcia v. Woman's Hosp.*, 97 F.3d at 813.

Regarding the district court's reliance on *Lee* and *Garcia v. Spun Steak* to insist on more detail, and statistics in particular, neither case

supports the district court's reasoning. For starters, and unlike Bolden-Hardge's claim, in *Garcia* and *Lee* the relevant disparate impact was not obvious on its face. In *Garcia*, the question concerned an English-only rule's effect on certain workers based on national origin; in *Lee*, the issue was racial disparities in criminal background checks. *Garcia*, 998 F.2d at 1485; *Lee*, 330 F.R.D. at 558–59. Neither policy's discriminatory impact on a class could be inferred on its face or from its wholesale nature.

Moreover, neither *Garcia* nor *Lee* suggested statistical evidence is required. In *Garcia*, for example, the court allowed a subset of the plaintiff class—non-bilingual employees—to proceed on a claim without statistics. 998 F.2d at 1488. And in *Lee*, the plaintiffs merely "aver[red]" that members of their racial class had "more than double" the arrest and conviction rate as whites. 330 F.R.D. at 561. This is hardly an exacting statistical allegation, and it pales in comparison to the wholesale exclusion of oath objectors presented in Bolden-Hardge's complaint.

Finally, and in any event, if for some reason Bolden-Hardge must include more detail to allege a disparate-impact claim—including, but not limited to, adding facts about the affected class, which includes Quakers, Mennonites, and other religious minorities—she has stood

ready to do so by amendment. *See Lopez*, 203 F.3d at 1130 (holding leave to amend should be refused only where defect "could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

## III. THIS COURT SHOULD RESTORE BOLDEN-HARDGE'S FREE-EXERCISE CLAIMS UNDER THE FEDERAL AND CALIFORNIA CONSTITUTIONS.

### A. A plaintiff pleads a free-exercise claim where she alleges that a government policy substantially burdens her religious beliefs and is subject to strict scrutiny.

The First Amendment to the United States Constitution forbids the government from "prohibiting the free exercise" of religion. U.S. Const. amend. I. Likewise, California Constitution Article I, Section 4 states that the "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed."

In *Sherbert*, the Supreme Court held that, absent a compelling and narrowly tailored interest, the First Amendment forbids the state from burdening a plaintiff's religious exercise by forcing her to violate her religious beliefs to secure a job. 374 U.S. at 404–06. And although the Court later held in *Employment Division v. Smith* that certain "neutral and generally applicable laws" are not subject to strict scrutiny, 494 U.S. at 881–85, it left undisturbed the application of strict scrutiny where exemptions are made to the policy in question. *See Fulton*, 141 S. Ct. at

1877 (making clear that *Sherbert* remains good law where government policy is not "generally applicable"). What's more, the Court in *Smith* explained, strict scrutiny can also apply where religious free exercise and another constitutional right are implicated in a "hybrid" way. *Smith*, 494 U.S. at 882.

When it comes to claims under California's free-exercise clause, the California Supreme Court has held courts must consider "whether the application of the statute imposes any burden upon the free exercise of the [affected party's] religion, and . . . if it does, whether some compelling state interest justifies the infringement." *People v. Woody*, 40 Cal. Rptr. 69, 72 (Ct. App. 1964). And although the state's high court has since discussed the prospect of a different level of scrutiny in cases of "neutral, generally applicable laws" akin to the federal decision in *Employment Division v. Smith*, it has so far declined such a move in light of finding strict scrutiny met in two leading free-exercise cases since 1990: *Catholic Charities of Sacramento v. Superior Court*, 10 Cal. Rptr. 3d 283 (Ct. App. 2004), and *North Coast Women's Care Medical Group v. Superior Court*, 81 Cal. Rptr. 3d 708 (Ct. App. 2008). *See also Am. Fam. Ass'n, Inc. v. City*

& *Cnty. of San Francisco*, 277 F.3d 1114, 1124 (9th Cir. 2020) (applying *Sherbert* to free-exercise claim under California constitution).

Regardless, a plaintiff pleads a "plausible free exercise claim" under either constitution where she alleges that a government policy or practice imposes "a substantial burden on [her] religious practice or exercise." *Cal. Parents for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1016 (9th Cir. 2020); *accord Cath. Charities*, 10 Cal. Rptr. 3d at 312. And a plaintiff is on even stronger ground if she has further alleged that the government policy is not generally applicable, since that would trigger strict scrutiny that cannot be resolved on the pleadings. *See Fulton*, 141 S. Ct. at 1877–78 (strict scrutiny triggered by exceptions); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (holding that affirmative defenses on disputed facts cannot be resolved by motion).

Pertinently, the Supreme Court has long held that a state imposes a substantial burden on religion by conditioning a job on the violation of religious convictions. *See, e.g.*, *Thomas*, 450 U.S. at 717–18 (holding the refusal of unemployment benefits imposed a substantial burden where plaintiff lost his job due to his religious beliefs); *Sherbert*, 374 U.S. at 403–06 (same); *Torcaso v. Watkins*, 367 U.S. 488, 496 (1961) (holding the

state "unconstitutionally invade[d] the appellant's freedom of belief and religion" by requiring him to declare his belief in God to secure a public job); *accord Cath. Charities*, 10 Cal. Rptr. 3d at 312 (relying on *Thomas* in defining "substantial burden" under California Constitution).

Rooted in this longstanding authority, and as Bolden-Hardge noted in her complaint, the district court in *Bessard*, 867 F. Supp. 1454, found that the very oath at issue here "substantially burdened" the religious beliefs of Jehovah's Witnesses seeking state jobs in violation of the analogous RFRA statute. ER 11, 16–17. (Like Bolden-Hardge, one of the *Bessard* plaintiffs offered an alternative that was refused. 867 F. Supp. at 1458.) Specifically, the court found that "taking the oath would offend a central tenet" of the plaintiffs' beliefs about loyalty to God and requiring them "to agree to take an oath that violates their religious tenets as a condition to being considered for public employment [therefore] places an undue burden on their right of free exercise." *Id.* at 1462–63.

Furthermore, a government policy that burdens a plaintiff's free religious exercise is not generally applicable—and thus warrants strict scrutiny—where the policy is not applied "across-the-board." *Smith*, 494 U.S. at 884. Accordingly, strict scrutiny is applied where exemptions or

accommodations to the policy are made in other situations. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 554 (1993) (applying strict scrutiny to ban on ritual animal slaughter where animal killing is allowed for other reasons); *Sherbert*, 374 U.S. at 406 (applying strict scrutiny to exclusion of Sabbatarian from unemployment benefits due to her Sabbath unavailability where exceptions are made for other unavailability); *Fraternal Ord. of Police v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999) (applying strict scrutiny to grooming policy that provided a medical accommodation but not a religious one).

Notably, the Supreme Court recently made clear that not only is a single exemption enough to trigger strict scrutiny, but that such scrutiny arises wherever a mechanism for exemption exists—even if no exemption has been granted. *See Tandon*, 141 S. Ct. at 1296 (applying strict scrutiny where state treats "*any* comparable secular activity more favorably than religious exercise" (emphasis in original)); *Fulton*, 141 S. Ct. at 1879 (applying strict scrutiny where public official can grant exemption, even if it "has never granted one"). And in assessing whether strict scrutiny applies to a public entity's action, the Court has considered not just the actions of that entity but also those charged with enforcing the law more

generally. *See Lukumi*, 508 U.S. at 537 (applying strict scrutiny to city ordinance based on "interpretation given to the ordinance" and exceptions urged by the state attorney general).[10]

### B. Bolden-Hardge pled that Defendants' insistence on the oath substantially burdened her religious exercise and warrants strict scrutiny.

As required by the pleading standard, Bolden-Hardge plausibly alleged that Defendants violated her free-exercise rights because the SCO's oath policy substantially burdened her religious exercise. *See Twombly*, 550 U.S. at 570 (on plausibility standard); *see also Torlakson*, 973 F.3d at 1016 (on pleading a substantial burden to allege "plausible free exercise claim").

Bolden-Hardge alleged that, as "a devout Jehovah's Witness," she "sincerely believe[s] that her faith forbids her from . . . swearing primary allegiance to any human government and, correspondingly, . . . swearing to engage in political or military activity—including taking up of arms,"

---

[10] Bolden-Hardge appreciates that this Court is bound by the Supreme Court's decision in *Employment Division v. Smith*—however it might apply, or not, in this case. But she preserves the argument that *Smith* was wrongly decided based on the "text of the Free Exercise Clause or [] the prevalent understanding of the scope of the free-exercise right at the time of the First Amendment's adoption." *Fulton*, 141 S. Ct. at 1888 (Alito, J., concurring).

and that Defendants' insistence on the oath "without exception, notation, or addendum" forced her to the impermissible choice between "'following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand.'" ER-7, 13 (quoting *Sherbert*, 374 U.S. at 404). Bolden-Hardge also alleged that, based on her "deeply held religious beliefs," taking the oath would force her "to affirmatively declare, absent her proposed addendum or other accommodation, that she owes primary and arms-bearing allegiance to the state" in violation of those beliefs. ER-16.

This is more than enough to plead a free-exercise claim. Indeed, requiring job applicants "to agree to take an oath that violates their religious tenets as a condition to being considered for public employment places an undue burden on their right of free exercise." *Bessard*, 867 F. Supp. at 1463; *see also Sherbert*, 374 U.S. at 404 (finding free-exercise burden where plaintiff is forced by the government "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand"). Or, as the Supreme Court described its landmark *Torcaso* decision, 367 U.S. 488: "We premised [*Torcaso*] on our

understanding that loss of a job opportunity for failure to compromise one's convictions states a constitutional claim." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 77 (1990); *accord Thomas*, 450 U.S. at 717–18; *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994).

Furthermore, Bolden-Hardge plausibly alleged that the state oath requirement is not generally applicable and is therefore subject to strict scrutiny. On that point, Bolden-Hardge alleged that (1) "other state agencies in California have granted accommodations to employees who object to signing the loyalty oath"; (2) when first hired by the FTB in 2016, she "declined to sign the oath" but was allowed to work there; (3) when returning to the FTB in 2017, the agency "promptly granted her request for religious accommodation and allowed her to sign the oath with an attached addendum"; and (4) the SCO's approach "contradicts then-Governor Schwarzenegger's assurance in vetoing an express religious exemption to state loyalty-oath requirements . . . because '[e]xisting law already requires public employers, including the State of California, to accommodate an employee whose sincerely held religious beliefs conflict with an employment requirement.'" ER-6–7, 10.

Additionally, in asking the district court for leave to amend were these allegations insufficient, Bolden-Hardge offered to further allege that (1) "California State University (CSU) has a policy of allowing an 'explanatory statement' accommodation similar to the one [she] sought"; (2) "[r]elying on EEOC guidance, CSU also insists that '[o]bjections to the oath on religious grounds must be examined on a case-by-case basis'"; and (3) "the University of California system allows employees to 'submit an addendum [to the oath], as long as it does not negate the oath,' and even offers sample addenda that include statements like '[t]his is not a promise to take up arms in contravention of my religious beliefs,' or 'I owe allegiance to Jehovah.'" ER-45 (citations omitted).

Moreover, were amendment needed, Bolden-Hardge could further allege that non-citizen state employees are exempt from the loyalty-oath requirement. *See Miller*, 121 Cal.App.3d at 186–87 (holding that "[t]here is nothing equivocal about the legislative expression" in California Government Code Sections 3100–3102 exempting from the oath "*aliens legally employed*" (emphasis added)). Furthermore, the oath provision itself recognizes that "inferior officers and employees . . . may be by law exempted." Cal. Const. art. XX, § 3

This slew of alleged accommodations or exemptions to the oath requirement—at the agency, legislative, or chief-executive level—show at least a plausible lack of general applicability of that requirement. *See Tandon*, 141 S. Ct. at 1296 (applying strict scrutiny where state treats "*any* comparable secular activity more favorably"); *Fulton*, 141 S. Ct. at 1879 (applying strict scrutiny where the law allows the government to grant an exemption, even if it "has never granted one"); *Lukumi*, 508 U.S. at 527, 537, 545 (considering exemptions urged by state attorney general when assessing general applicability of local ordinance).

Alternatively and finally, Bolden-Hardge alleged that Defendants violated her free-exercise rights for the further reason that their policy "infringed upon her combined rights of free exercise of religion and free speech." ER-16. "As the Supreme Court has explained," she added, "even where there is a 'neutral, generally applicable law,' the First Amendment can nonetheless be violated where that law infringes on both 'religiously motivated action' and the 'freedom of speech.'" *Id.* (quoting *Smith*, 494 U.S. at 881). *Employment Division v. Smith* cited *Barnette*, 319 U.S. 624, as an example of a "hybrid" speech and religious-exercise situation where heightened scrutiny is warranted. 494 U.S. at 882. So too here.

**C. The district court rightly accepted that Bolden-Hardge pled a substantial burden but erred in finding she failed to plead that the oath was not generally applicable.**

In ruling on Bolden-Hardge's free-exercise claims, the district court nowhere disputed that her complaint pled a substantial burden on her religious exercise. *See* ER 109–12. Rightly so, for the reasons described in the previous section. *See Bessard*, 867 F. Supp. at 1463 (finding that requiring oath "as a condition [of] public employment places an undue burden on [plaintiffs'] right of free exercise").

But the district court still dismissed the federal free-exercise claim, on the supposed ground that the Supreme Court's decision in "*Sherbert* was abrogated" by *Smith*, and, in its view, "[t]he plaintiffs do not dispute the validity of the oath itself and of its general applicability." ER-110–11. The court further observed that this result is equally required for the state free-exercise claim under *American Family Association*, 277 F.3d 1114. ER-111. Finally, the court intimated, the free-exercise claims are precluded by the court's rejection of the addendum in *Smith v. County Engineer*, 72 Cal. Rptr. 501, and by the upholding of oaths in *Cole v. Richardson*, 405 U.S. 676 (1972) and *Chilton v. Contra Costa Community College District*, 127 Cal. Rptr. 659 (Ct. App. 1976). ER-111–12.

But as described above, *Sherbert* remains good law under the federal and state constitutions. *See Fulton*, 141 S. Ct. at 1877 (applying *Sherbert* where policy imposes substantial burden and is not "generally applicable"); *accord Am. Fam. Ass'n*, 277 F.3d at 1124. Bolden-Hardge, moreover, plainly disputed the oath's "general applicability" by alleging in her complaint and proffering on amendment the oath accommodations or exemptions that are otherwise made or promised—by state agencies, by the chief executive, or for certain categories of workers. At bottom, she has alleged a "plausible" enough claim on the point to survive dismissal and permit further inquiry. *Twombly*, 550 U.S. at 570.

As for the district court's invocation of *Smith v. County Engineer*, that decision cannot save the court's reasoning. Putting aside that *Smith* is factually distinguishable as discussed above, it nowhere addressed a free-exercise claim. 72 Cal. Rptr. 501. Moreover, since *Smith* involved only an interpretation of state law, the First Amendment would trump any conflict it might present in any event.

*Cole* and *Chilton* are likewise inapposite to Bolden-Hardge's free-exercise claims, as they involved only facial challenges to the oaths there on assembly and speech grounds. *Cole*, 405 U.S. 676; *Chilton*, 127 Cal.

Rptr. 659. They did not address the independent question of free religious exercise, let alone an as-applied challenge alleging that the oath requirement burdens the plaintiff's faith. *See Bessard*, 867 F. Supp. at 1465 (ruling for plaintiff in as-applied challenge under RFRA).

Finally, in dismissing Bolden-Hardge's federal free-exercise claim, the district court found in the alternative that the Eleventh Amendment precludes that claim against Defendant SCO as an "arm of the state" and Bolden-Hardge's demand for "retrospective monetary relief" on the claim against Defendant Yee in her official capacity. ER-109–10. The court then denied Bolden-Hardge's request to amend to sue Yee individually based on its rejection of the claim on the merits. *Id.*

Were this Court to restore the federal free-exercise claim, therefore, Bolden-Hardge asks that any remand include a recognition, by leave to amend or otherwise, of her right to at least seek all available remedies against Defendant Yee in her official capacity—including, but not limited to, prospective injunctive relief (e.g., reinstatement of the job offer, policy change), declaratory relief, and nominal damages, as appropriate. *See Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) (discussing availability of prospective relief against state officials in their official capacities); *see*

*also Uzeugbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (recognizing availability of nominal damages for violations of constitutional rights).

Bolden-Hardge further asks she be given leave to amend to sue Yee and unnamed "Does" for damages in their individual capacities. *See Porter*, 319 F.3d at 491 (describing ability to sue state officials for damages in their individual capacities).

## IV.  IN THE ALTERNATIVE, THIS COURT SHOULD REVERSE AND REMAND TO ALLOW BOLDEN-HARDGE TO AMEND.

As described above, Rule 15(a) "provides that a trial court shall grant leave to amend when justice so requires, [and t]he Supreme Court has stated that this mandate is to be heeded." *Lopez*, 203 F.3d at 1130 (internal quotation marks omitted.) What's more, where the complaint can "be saved by *any* amendment," leave to amend should be granted. *Polich*, 942 F.2d at 1472; *see also Eminence Cap.*, 316 F.3d at 1051 (emphasizing leave should be given with "extreme liberality").

In light of this liberal standard, were this Court to disagree with Bolden-Hardge and decide that her allegations are insufficient to state her Title VII, FEHA, or constitutional claims against Defendants, she asks she be afforded leave to amend. As noted above, this amendment could include, for example, (1) more detail about the particulars of her

religious beliefs and the impact of the oath on them; (2) facts about Defendants' failure to negotiate or accommodate—including options that could have been pursued; (3) facts about the affected class of Jehovah's Witnesses, Quakers, Mennonites, and other religious minorities who share similar religious beliefs; (4) further examples or explication of exemptions or accommodations that the state and its agencies make to the loyalty oath; or (5) additional remedies or parties. Again, Bolden-Hardge believes none of these amendments should be necessary. But if this Court disagrees, she stands ready to amend.

## CONCLUSION

This Court should reverse the district court's dismissal of Bolden-Hardge's complaint and remand for Defendants to answer, because she has adequately alleged that their rescission of a job offer over her sincere religious objections to the loyalty oath gives rise to claims under Title VII, the First Amendment, and their state-law analogues.

In the alternative, and to the extent further allegations are needed to cure any defect, this Court should reverse and remand for the district court to allow Bolden-Hardge to file a First Amended Complaint.[11]

Dated:  November 15, 2021          Respectfully submitted,


                              By:      *s/ James A. Sonne*
                                     _____
                                       James A. Sonne


                                     JAMES A. SONNE
                                     ZEBA A. HUQ
                                     **STANFORD LAW SCHOOL**
                                     **RELIGIOUS LIBERTY CLINIC**

                                     JOSHUA C. MCDANIEL
                                     **HARVARD LAW SCHOOL**
                                     **RELIGIOUS FREEDOM CLINIC**

                                     WENDY MUSELL
                                     **LAW OFFICES OF**
                                     **WENDY MUSELL**

                                     *Attorneys for Plaintiff-Appellant*

---

[11] Special thanks to Stanford Religious Liberty Clinic students Reed Sawyers and Lane Corrigan, and to Harvard Religious Freedom Clinic students Emily Chazen and Jack Foley for their help preparing this brief.

## STATEMENT OF RELATED CASES

Plaintiff-Appellant is not aware of any related cases pursuant to Federal Rule of Appellate Procedure 28-2.6.

**CERTIFICATE OF COMPLIANCE**

I certify pursuant to Federal Rules of Appellate Procedure 32(a)(4) and Circuit Rule 32-1 that the attached brief is set in Century Schoolbook font, double-spaced, has a typeface of 14 points, and, according to the word count feature of the word processing system used to prepare the brief (Microsoft Word for Mac, Version 16.54), contains 13,970 words.

Dated: November 15, 2021

By:  *s/ James A. Sonne*

James A. Sonne

# ADDENDUM

# INDEX TO ADDENDUM

## Pertinent Statutory and Constitutional Authorities

42 U.S.C. § 2000e ............................................................. A-1

42 U.S.C. § 2000e-2 .......................................................... A-4

42 U.S.C. § 2000e-7 .......................................................... A-6

U.S. Const., amend. I ........................................................ A-7

Cal. Gov't Code § 3101 ..................................................... A-8

Cal. Gov't Code § 3102 ..................................................... A-9

Cal. Gov't Code § 3103 ................................................... A-10

Cal. Gov't Code § 12940 ................................................. A-11

Cal. Gov't Code § 18150 ................................................. A-13

Cal. Gov't Code § 18151 ................................................. A-14

Cal. Const. art. I, § 4 ..................................................... A-15

Cal. Const. art. XX, § 3 .................................................. A-16

Governor's Veto Message for S.B. 115, 2009–10 Cal. Leg., Reg. Sess. (2009) ............................................................... A-17

**Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000 *et seq.***

## 42 U.S.C. § 2000e. Definitions

For the purposes of this subchapter--

**(a)** The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers.

**(b)** The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

\*　　\*　　\*

**(f)** The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set

forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

**(g)** The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.

**(h)** The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959, and further includes any governmental industry, business, or activity.

**(i)** The term "State" includes a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act.

**(j)** The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

*　　*　　*

**(l)** The term "complaining party" means the Commission, the Attorney General, or a person who may bring an action or proceeding under this subchapter.

**(m)** The term "demonstrates" means meets the burdens of production and persuasion.

**(n)** The term "respondent" means an employer, employment agency, labor organization, joint labor-management committee controlling apprenticeship or other training or retraining program, including an on-the-job training program, or Federal entity subject to section 2000e-16 of this title.

# 42 U.S.C. § 2000e-2. Unlawful employment practices

## (a) Employer practices

It shall be an unlawful employment practice for an employer--

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*   *   *

## (k) Burden of proof in disparate impact cases

> **(1)(A)** An unlawful employment practice based on disparate impact is established under this subchapter only if--

> **(i)** a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

> **(ii)** the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

> **(B)(i)** With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a

disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

**(ii)** If the respondent demonstrates that a specific employment practice does not cause the disparate impact, the respondent shall not be required to demonstrate that such practice is required by business necessity.

**(C)** The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice".

**(2)** A demonstration that an employment practice is required by business necessity may not be used as a defense against a claim of intentional discrimination under this subchapter.

\*     \*     \*

**(m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices**

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

## 42 U.S.C. § 2000e-7. Effect on State laws

Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

## U.S. Const., amend. I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

# Cal. Gov't Code § 3101. Definitions

For the purpose of this chapter the term "disaster service worker" includes all public employees and all volunteers in any disaster council or emergency organization accredited by the Office of Emergency Services. The term "public employees" includes all persons employed by the state or any county, city, city and county, state agency or public district, excluding aliens legally employed.

## Cal. Gov't Code § 3102. Requirement of taking oath or affirmation; temporary or successive employments

(a) All disaster service workers shall, before they enter upon the duties of their employment, take and subscribe to the oath or affirmation required by this chapter.

(b) In the case of intermittent, temporary, emergency or successive employments, then in the discretion of the employing agency, an oath taken and subscribed as required by this chapter shall be effective for the purposes of this chapter for all successive periods of employment which commence within one calendar year from the date of that subscription.

(c) Notwithstanding subdivision (b), the oath taken and subscribed by a person who is a member of an emergency organization sanctioned by a state agency or an accredited disaster council, whose members are duly enrolled or registered with the Office of Emergency Services, or any accredited disaster council of any political subdivision, shall be effective for the period the person remains a member with that organization.

## Cal. Gov't Code § 3103. Form of oath or affirmation

The oath or affirmation required by this chapter is the oath or affirmation set forth in Section 3 of Article XX of the Constitution of California.

**Cal. Gov't Code § 12940. Employers, labor organizations, employment agencies and other persons; unlawful employment practices; exceptions**

It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran or military status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

\* \* \*

(*l*)(1) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to bar or to discharge a person from employment or from a training program leading to employment, or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship, as defined in subdivision (u) of Section 12926, on the conduct of the business of the employer or other entity covered by this part.

Religious belief or observance, as used in this section, includes, but is not limited to, observance of a Sabbath or other religious holy day or days, reasonable time necessary for travel prior and subsequent to a religious observance, and religious dress practice and religious grooming practice as described in subdivision (q) of Section 12926. This subdivision shall also apply to an apprenticeship training program, an unpaid internship, and any other program to provide unpaid experience for a person in the workplace or industry.

(2) An accommodation of an individual's religious dress practice or religious grooming practice is not reasonable if the accommodation requires segregation of the individual from other employees or the public.

(3) An accommodation is not required under this subdivision if it would result in a violation of this part or any other law prohibiting discrimination or protecting civil rights, including subdivision (b) of Section 51 of the Civil Code and Section 11135 of this code.

(4) For an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted.

\* \* \*

## Cal. Gov't Code § 18150. Required oath

The oath required by this chapter is the oath set forth in Section 3 of Article XX of the Constitution of California.

## Cal. Gov't Code § 18151. Persons required to take oath; time of taking

The oath required by this chapter shall be taken and subscribed by:

(a) Every person who is appointed to a State position not in the State civil service and not otherwise so required by law, within 30 days of the date of appointment; and

(b) Every person who has not previously taken and subscribed the oath and who is employed in a permanent position in the State civil service where the employment continues for 30 days or more, within the first 30 days of his employment.

## Cal. Const. art. I, § 4

Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion.

A person is not incompetent to be a witness or juror because of his or her opinions on religious beliefs.

Members of the Legislature, and all public officers and employees, executive, legislative, and judicial, except such inferior officers and employees as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation:

"I, ............, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

\*   \*   \*

And no other oath, declaration, or test, shall be required as a qualification for any public office or employment.

"Public officer and employee" includes every officer and employee of the State, including the University of California, every county, city, city and county, district, and authority, including any department, division, bureau, board, commission, agency, or instrumentality of any of the foregoing.

**Governor's Veto Message for S.B. 115, 2009–10 Cal. Leg., Reg. Sess. (2009)**

To the Members of the California State Senate:

I am returning Senate Bill 115 without my signature.

Existing law already requires public employers, including the State of California, to accommodate an employee whose sincerely held religious beliefs conflict with an employment requirement. Therefore, this bill is unnecessary.

For this reason I am unable to sign this bill.

Sincerely,

Arnold Schwarzenegger

# CERTIFICATE OF SERVICE

I hereby certify that on **November 15, 2021**, I electronically filed the foregoing **Appellant's Opening Brief** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: November 15, 2021

By:     *s/ James A. Sonne*

James A. Sonne