No. 21-15660

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIANNA BOLDEN-HARDGE,
*Plaintiff-Appellant,*
v.
OFFICE OF THE CALIFORNIA STATE CONTROLLER, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of California
The Honorable John A. Mendez
Case No. 2:20-cv-02081-JAM

**Brief of Profs. Daniel Conkle, Richard Garnett, Douglas Laycock, Michael McConnell, Gregory Sisk, and Nelson Tebbe as *Amici Curiae* in Support of Plaintiff-Appellant**

Eugene Volokh\*
First Amendment Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

\*  Counsel would like to thank Aris Prince and Anastasia Thatcher, UCLA School of Law students who worked on the brief.

# TABLE OF CONTENTS

Table of Contents ............................................................................................. i

Table of Authorities ......................................................................................... ii

Interest of *Amici Curiae* ................................................................................. 1

Summary of Argument ..................................................................................... 2

Argument .......................................................................................................... 4

    I.   Title VII requires that an accommodation be given in this case ........................................................................................................ 4

        A.  Bolden-Hardge has established a prima facie case of failure to accommodate ......................................................... 4

        B.  Accommodating Bolden-Hardge would not be an undue hardship ............................................................................. 8

          1.  There is no conflict with the California Constitution ........... 8

          2.  If state law forbade addenda such as the one Bolden-Hardge seeks, it would be preempted by Title VII in this case ............................................................................................. 9

          3.  Allowing Bolden-Hardge to submit a supplement to her oath would impose at most a *de minimis* cost on the Office ............................................................................... 12

Conclusion ..................................................................................................... 13

Certificate of Compliance ............................................................................... 14

Certificate of Service ..................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Gen. Dynamics Convair Aerospace Div.*, 598 F.2d 397 (9th Cir. 1978) ................................................................. 12

*Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60 (1986) ...................... 4, 8

*Coal. for Econ. Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997) ............. 11

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ............. 7

*EEOC v. Santa Barabara County*, 666 F.2d 373 (9th Cir. 1982) ............. 9

*Homemakers, Inc. v. Div. of Indus. Welfare*, 509 F.2d 20 (9th Cir. 1974) ................................................................................. 9, 10

*Lawson v. Washington*, 296 F.3d 799 (9th Cir. 2002) .............................. 6

*Loc. 246, Util. Workers Union of Am., AFL-CIO v. S. Cal. Edison Co.*, 320 F. Supp. 1262 (C.D. Cal. 1970) ............................... 10

*Malabed v. N. Slope Borough*, 335 F.3d 864 (9th Cir. 2003) .................. 11

*Proctor v. Consol. Freightways Corp.*, 795 F.2d 1472 (9th Cir. 1986) ................................................................................................. 8

*Rosenfeld v. S. Pac. Co.*, 444 F.2d 1219 (9th Cir. 1971) ........................ 11

*Thomas v. Rev. Bd.*, 450 U.S. 707 (1981) ................................................ 3

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1976) ........ 4, 10, 12

**Statutes**

42 U.S.C. § 2000e-2(i) ............................................................................ 11

42 U.S.C. § 2000e-7 .................................................................................. 9

42 U.S.C. § 2000h-4 .................................................................................. 9

Cal. Const. Art. XX, § 3 ............................................................................6, 8

**Other Authorities**

Jeff Kaufman, *Quakers and Affirming* (Aug 6. 2011), https://www.jefftk.com/p/quakers-and-affirming ............................................2

*Let Your Yes Mean Yes*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/402012763 .................................................................................2, 5

*Oath*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/1200003286...................................5

Sanford Levinson, *Constituting Communities Through Words That Bind: Reflections on Loyalty Oaths*, 84 MICH. L. REV. 1440 (1986)..............................................................................................2

Stephen F. Befort, *Demystifying Federal Labor and Employment Law Preemption*, 13 LAB. LAW. 429, 441 (1998) .............9

*What Is the Bible's View? The Taking of Oaths*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/101975528 .........................................2, 5, 6

*What Is the Watch Tower Bible and Tract Society?*, OFFICIAL WEBSITE OF JEHOVAH'S WITNESSES, https://www.jw.org/en/jehovahs-witnesses/faq/watchtower-society/ (last visited Nov. 2, 2021)................................................................................................5

*Why Keep Your Promises?*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/1999682 .............................................................................................5

# INTEREST OF *AMICI CURIAE*[1]

*Amici* are all leading scholars of the law of government and religion:

- Prof. Daniel Conkle (Indiana University Maurer School of Law).
- Prof. Richard Garnett (University of Notre Dame Law School).
- Prof. Douglas Laycock (University of Virginia School of Law).
- Prof. Michael McConnell (Stanford Law School).
- Prof. Gregory Sisk (University of St. Thomas School of Law).
- Prof. Nelson Tebbe (Cornell Law School).

They are signing this brief because they are interested in the sound application and development of Title VII's religious accommodation provision. As is the norm for academics, they are representing only their own views, and not those of their institutions (or of any other institution).

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person has contributed money that was intended to fund preparing or submitting the brief, except that UCLA School of Law paid the expenses involved in filing this brief. All parties have consented to the filing of the brief.

# SUMMARY OF ARGUMENT

Oaths and promises have long been tools for binding society together,[2] and many religions take seriously the commitment created by a promise. For example, some sects of Christianity, such as the Quakers, regard all promises as being witnessed by God.[3] Jehovah's Witnesses also believe that oaths are a solemn appeal to God[4] and that God expects you to keep your promises.[5] Thus, when such a believer is asked to promise something that she would view as inconsistent with God's will, she cannot make such a commitment.

---

[2] *See* Sanford Levinson, *Constituting Communities Through Words That Bind: Reflections on Loyalty Oaths*, 84 MICH. L. REV. 1440 (1986).

[3] Jeff Kaufman, *Quakers and Affirming* (Aug 6. 2011), https://www.jefftk.com/p/quakers-and-affirming.

[4] *What Is the Bible's View? The Taking of Oaths*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/101975528.

[5] *Let Your Yes Mean Yes*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/402012763 ("To keep the promise we made to God at our dedication, we must also be truthful in other important matters. For example: If you are married, you should keep the special promise you made to love and cherish your marriage mate. If you have signed a business contract or filled out an application form to volunteer to work with the congregation or the organization, then you should do what you have promised. Maybe you have accepted an invitation to have a meal at a certain time at the home of someone who has very little. You should keep your promise even if you get another invitation that you think is better. If you promised to make a return visit on

Here, the Office of the California State Controller has failed to provide an accommodation that would let Brianna Bolden-Hardge remain, by her lights, honest in God's eyes. Forbidding Bolden-Hardge from providing her chosen addendum clarifying what she was saying by signing the California oath or affirmation would conflict with her religious beliefs, as a Jehovah's Witness, on the importance and implications of making a promise or taking an oath. Bolden-Hardge thus had to choose between violating the tenets of her religion by signing the oath without the addendum or forgoing an opportunity for employment at a higher-paying job, creating a substantial burden on her religious beliefs. *See Thomas v. Rev. Bd.*, 450 U.S. 707, 717-18 (1981).

This violates the Title VII duty of reasonable accommodation, because the Office cannot show that accommodating Bolden-Hardge would qualify as an undue hardship: Title VII preempts state law, so any conflict between Bolden-Hardge's requested addendum and the California Constitution is irrelevant; moreover, letting an employee sign a modest addendum imposes, at most, a *de minimis* cost on the Office. *See Ansonia*

---

someone you met in the house-to-house ministry, you should let your 'Yes' mean Yes. Jehovah will bless your ministry.").

3

*Bd. of Educ. v. Philbrook,* 479 U.S. 60, 67 (1986). Therefore, the Office was obligated to provide Bolden-Hardge with a religious accommodation, and the Office's refusal to do so amounts to religious discrimination. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 72 (1976).

## ARGUMENT

**I. Title VII requires that an accommodation be given in this case**

**A. Bolden-Hardge has established a prima facie case of failure to accommodate**

Title VII makes it "an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practice of his employees." *Hardison,* 432 U.S. at 74. To succeed under a Title VII religious accommodation claim, Bolden-Hardge must establish a prima facie case by proving three things. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

**1.** Bolden-Hardge must establish that she has a bona fide religious belief that conflicted with her employment duties. *Id.* Neither the district court nor the Office denies that Bolden-Hardge has a bona fide religious belief. *See* ER 28-29; ER 74.

And the state oath requirement indeed directly conflicts with Bolden-Hardge's religious convictions as a Jehovah's Witness. Jehovah's Witnesses look to the Watch Tower Bible and Tract Society to "support their worldwide work, which includes publishing Bibles and Bible-based literature."[6] According to the Society, the keeping of one's word, once given, "should be viewed as a sacred duty."[7] In keeping their promises to God, Jehovah's Witnesses must also "be truthful in other important matters."[8] "Keeping . . . promises is one way to display love for God and neighbor . . . ."[9]

An oath is defined as "a solemn appeal to God, or to some revered person or thing, to witness one's determination to speak the truth or to keep a promise."[10] To many Jehovah's Witnesses, "[a] true Christian . . .

---

[6] *What Is the Watch Tower Bible and Tract Society?*, OFFICIAL WEBSITE OF JEHOVAH'S WITNESSES, https://www.jw.org/en/jehovahs-witnesses/faq/watchtower-society/ (last visited Nov. 2, 2021).

[7] *Oath*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/1200003286.

[8] *Let Your Yes Mean Yes*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/402012763.

[9] *Why Keep Your Promises?*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/1999682.

[10] *What Is the Bible's View? The Taking of Oaths*, THE WATCHTOWER BIBLE AND TRACT SOCIETY, INC. (2021), https://wol.jw.org/en/wol/d/r1/lp-e/101975528.

would not take an oath that would involve him in the controversies of the world."[11] There are "oaths acceptable to Jehovah,"[12] but, if anything conflicts with God's law, "the Christian cannot conscientiously swear to it."[13]

Bolden-Hardge believes that the California state oath, as written, would wrongly promise her to become involved in the controversies of the world. To her, "defend[ing] the Constitution . . . against all enemies," Cal. Const. Art. XX, § 3, may be read as including bearing arms or engaging in violence. ER 7-8, ¶¶ 20, 28. The oath requirement thus creates a conflict between her religious beliefs and employment duties. This Court came to a similar conclusion in *Lawson v. Washington*, where it held that it was "undisputed" that the plaintiff, a Jehovah's Witness, had "bona fide religious beliefs" that "conflict[ed] with the [Washington State Patrol] requirements that he salute the flag and . . . swear his allegiance to the United States and the State of Washington." 296 F.3d 799, 804 (9th Cir. 2002).

---

[11] *Id.*
[12] *Id.*
[13] *Id.*

6

**2.** Bolden-Hardge must show that she informed the Office of her beliefs and the conflict. *Heller*, 8 F.3d at 1438. Shortly after receiving the Office's offer of employment at a higher-paying job, she submitted a written request for a religious accommodation. ER 8, ¶¶ 26-27, 30. She followed up her request with calls and emails to employees at the Office. ER 9, ¶ 35. *EEOC v. Abercrombie & Fitch Stores, Inc.* has since relaxed this requirement, providing that "an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed." 575 U.S. 768, 773 (2015). But in any event, the employer both knew that the accommodation was sought and "act[ed] with the motive of avoiding accommodation." *Id.*

**3.** Bolden-Hardge must establish that the Office "subjected [her] to discriminatory treatment . . . because of [her] inability to fulfill the job requirements." *Heller*, 8 F.3d at 1438. A few days after her request for an accommodation, the Office rescinded the job offer on the grounds that the oath requirement could not be modified and her requested accommodation would be a modification. ER 9, ¶ 34. The Office therefore denied her

employment "because of her observance of [her] belief." *Proctor v. Consol. Freightways Corp.*, 795 F.2d 1472, 1475 (9th Cir. 1986).

## B. Accommodating Bolden-Hardge would not be an undue hardship

Because Bolden-Hardge has established a prima facie case, the burden has shifted to the Office to show that it made "an effort reasonably to accommodate the employee's religious beliefs. The [Office] need not make such an effort if it can show that any accommodation would impose undue hardship." *Heller*, 8 F.3d at 1440 (citations omitted). An undue hardship arises when the accommodation results in "more than a *de minimis* cost to the employer." *Ansonia Bd. of Educ.*, 479 U.S. at 67.

### 1. There is no conflict with the California Constitution

Letting Bolden-Hardge submit her addendum to the state oath is entirely consistent with the California Constitution, which states only that "no other oath, declaration, or test, shall be *required* as a qualification for any public office or employment." Cal. Const. Art. XX, § 3 (emphasis added). Thus, the Office cannot demand that Bolden-Hardge must sign an addendum or another oath, but the state constitution does not preclude letting Bolden-Hardge sign an addendum.

8

## 2. If state law forbade addenda such as the one Bolden-Hardge seeks, it would be preempted by Title VII in this case

If, contrary to what we have argued, the California state oath requirement prohibits such addenda, the Office would still be obligated to accommodate Bolden-Hardge, because such a prohibition would be inconsistent with Title VII's purpose of requiring religious accommodations.

Federal antidiscrimination law preempts state law that is inconsistent with federal law or denies rights to employees conferred on them by federal law.[14] Title VII preempts state law where it would "permit the doing of any act which would be an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-7. Similarly, Title XI, which applies to all titles of the Civil Rights Act, also provides that state laws are preempted if "such provision is inconsistent with any of the purposes of this Act, or any provision thereof." 42 U.S.C. § 2000h-4. Thus, in *Homemakers, Inc. v. Div. of Indus. Welfare*, this Court declared invalid California Labor Code provisions requiring payments of premium overtime pay to covered women employees, because the provisions were in conflict with Title VII. 509 F.2d 20 (9th Cir. 1974). Likewise, in *EEOC v. Santa Barbara County*,

---

[14] *See* Stephen F. Befort, *Demystifying Federal Labor and Employment Law Preemption*, 13 LAB. LAW. 429, 441 (1998).

this Court decided that, where there was a conflict between California's mandatory retirement statute and the Age Discrimination in Employment Act, "federal law prevails." 666 F.2d 373, 328 (9th Cir. 1982).

"The prohibition against religious discrimination" under Title VII includes a prohibition against refusing "to accommodate to the reasonable religious needs of employees . . . where such accommodation can be made without serious inconvenience to the conduct of the business." *Hardison*, 432 U.S. at 72 (internal quotes omitted). The Office's refusal to allow Bolden-Hardge to sign an addendum to the state oath, claiming that state law forbids it, thus amounts to religious discrimination. Therefore, the state oath requirement is preempted by Title VII to the extent it does not allow for a reasonable accommodation. And because the state oath requirement "conflict[s] with the Civil Rights Act of 1964 [it] therefore cannot be enforced" against Bolden-Hardge. *Homemakers*, 609 F.2d at 23.

To be sure, Tittle VII ensures the "preservation of state laws which parallel [Title VII] in prohibiting employment discrimination," *Loc. 246, Util. Workers Union of Am., AFL-CIO v. S. Cal. Edison Co.*, 320 F. Supp. 1262, 1264 (C.D. Cal. 1970), and Title XI "save[s] state laws aimed at preventing or punishing discrimination." *Rosenfeld v. S. Pac. Co.*, 444

F.2d 1219, 1226 (9th Cir. 1971). This is why, for instance, in *Coal. for Econ. Equity v. Wilson*, this Court upheld a section of the California Constitution that did not "actually conflict" with Title VII, 122 F.3d 692, 710 (9th Cir. 1997) (cleaned up), given that the section merely provided that "[t]he state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin." *Id.* at 696. Similarly, in *Malabed v. N. Slope Borough*, this Court held that Title VII did not preempt an Alaska constitutional provision prohibiting employment preferences favoring Native Americans. 335 F.3d 864 (9th Cir. 2003); *see* 42 U.S.C. § 2000e-2(i). "Congress did not recite an intent to preempt state laws forbidding discrimination, nor has it occupied the field in a way that prohibits states from outlawing discrimination." *Malabed*, 335 F.3d at 870.

But in both *Wilson* and *Malabed*, the state constitutions provided more expansive protection than Title VII required. Here, California's constitution is being asserted to *allow* a discriminatory hiring practice. While the state laws in *Wilson* and *Malabed* are those that Sections 708 and 1104 are designed to preserve, the Office is using the state law against Bolden-Hardge in a way that the Civil Rights Act was designed to preempt. Thus,

11

the Office cannot rely on inconsistencies between the accommodation and the state law as an undue hardship.

### 3. Allowing Bolden-Hardge to submit a supplement to her oath would impose at most a *de minimis* cost on the Office

Bolden-Hardge's proposed accommodation would cause no hardship to the government—indeed, it would be much easier to implement than some accommodations that this Court found to be required by Title VII. For example, in *Heller*, this Court found that it was not an undue hardship for the employer to let the plaintiff leave work during a busy sales weekend to attend his family's religious conversion ceremony. 8 F.3d at 1437, 1440. Likewise, in *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 598 F.2d 397, 399 (9th Cir. 1978), this Court held that refusal to join a union did not amount to an undue hardship even though it would create some tension between employees. Allowing Bolden-Hardge to sign a small addendum to the state oath would impact the work of the Office to a much lesser degree.

Of course, some accommodations would indeed be too burdensome. In *Hardison*, for instance, the Court held that disrupting the seniority-based staffing system of a union's contract amounted to an undue hardship because it would come "at the expense of other [employees]." 432 U.S.

at 81. But here, allowing Bolden-Hardge to submit her oath with her proposed addendum to the state constitution would not create any expense to anyone.

## CONCLUSION

The Office's rescission of its job offer to Bolden-Hardge violated Title VII's religious accommodation requirement. This Court should therefore reverse the decision below.

Respectfully Submitted,

s/ Eugene Volokh

Attorney for *Amici Curiae*
First Amendment Clinic
UCLA School of Law
385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,506 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because this brief has been prepared in a proportionally spaced typeface using Word 365 in 14-point Century Schoolbook.

Dated: November 22, 2021

s/ <u>Eugene Volokh</u><br>
Attorney for *Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief *Amici Curiae* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 22, 2021.

All participants in the case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: November 22, 2021

s/ <u>Eugene Volokh</u>
Attorney for *Amici Curiae*
