**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIANNA BOLDEN-HARDGE, *Plaintiff-Appellant,* | No. 21-15660 |
| v. | D.C. No. 2:20-cv-02081-JAM-DB |
| OFFICE OF THE CALIFORNIA STATE CONTROLLER; MALIA M. COHEN,* in her official capacity as California State Controller, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted November 17, 2022
San Jose, California

Filed April 3, 2023

Before: Mary M. Schroeder, Susan P. Graber, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland

---

* Malia M. Cohen has been substituted for her predecessor, Betty T. Yee, under Fed. R. App. P. 43(c)(2).

## SUMMARY[**]

### Employment Discrimination / Free Exercise

Reversing the district court's dismissal of Brianna Bolden-Hardge's complaint challenging a state employer's refusal to allow a religious addendum to the public-employee loyalty oath set forth in the California Constitution, and remanding, the panel held that Bolden-Hardge stated claims under Title VII and the California Fair Employment and Housing Act and was entitled to leave to amend her claims under the Free Exercise Clauses of the federal and state constitutions.

Bolden-Hardge, a devout Jehovah's Witness, objected to California's loyalty oath because she believed it would violate her religious beliefs by requiring her to pledge primary allegiance to the federal and state governments and to affirm her willingness to take up arms to defend them. When she was offered a position at the California Office of the State Controller, the Controller's Office asked her to take the loyalty oath. She requested an accommodation to sign the oath with an addendum specifying that her allegiance was first and foremost to God and that she would not take up arms. The Controller's Office rejected this proposal and rescinded the job offer. Bolden-Hardge returned to a lower-paying job at the California Franchise Tax Board, which then required her to take the oath but permitted her to include an

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

addendum like the one that she had proposed to the Controller's Office.

Bolden-Hardge sued the Controller's Office and the California State Controller in her official capacity, alleging violations of Title VII under both failure-to-accommodate and disparate-impact theories. She also asserted a failure-to-accommodate claim against the Controller's Office under the California Fair Employment and Housing Act ("FEHA"), and she alleged that the refusal by both defendants to accommodate her religious beliefs violated the Free Exercise Clauses of the federal and state constitutions. Bolden-Hardge sought declaratory relief for all of her claims, and she sought damages for all of her claims except the California free-exercise claim.

The panel held that, as currently pleaded, Bolden-Hardge's alleged injury was redressable only through a claim for damages. The panel held that she lacked the actual and imminent threat of future injury required to have standing to seek prospective relief on any of her claims, but she could attempt to cure this defect by amendment. The panel held that Bolden-Hardge could seek damages from the Controller's Office on her claims under Title VII, which abrogates states' sovereign immunity, and FEHA, which similarly subjects state employers to suits for damages. As currently pleaded, she could not obtain damages for her free-exercise claim under 42 U.S.C. § 1983, which does not provide a cause of action to sue state entities or state officials in their official capacities. The panel held, however, that the district court abused its discretion in denying Bolden-Hardge leave to amend to seek damages from the State Controller in her individual capacity.

The panel held that, because Bolden-Hardge had standing to seek damages on her claims under Title VII and FEHA, it had jurisdiction to consider the merits of those claims. The panel held that Bolden-Hardge pleaded a prima facie case of failure to accommodate religion under Title VII and FEHA by alleging that she held a bona fide religious belief that conflicted with the "faith and allegiance" component of the loyalty oath, which was an employment requirement. Assuming without deciding that accommodating Bolden-Hardge would violate the California Constitution, the panel held that the Controller's Office could not rebut Bolden-Hardge's prima facie case by arguing that violating state law would pose an undue hardship as a matter of law. The panel explained that the presumption of undue hardship applies only when accommodating an employee's religious beliefs would require a *private* employer to violate federal or state law. Where the employer is part of the very state government that is responsible for creating and enforcing the law, and there is no indication that violating that law would subject the public employer to an enforcement action by another part of state government, deeming accommodation a presumptive undue hardship at the pleadings stage would permit states to legislate away federal accommodation obligations. The panel noted that the Third Circuit has similarly focused on the risk of enforcement in assessing undue hardship.

The panel held that Bolden-Hardge pleaded a prima facie case of disparate impact, which requires a plaintiff to (1) show a significant disparate impact on a protected class or group, (2) identify the specific employment practices or selection criteria at issue, and (3) show a causal relationship between the challenged practices or criteria and the disparate impact. The panel held that to satisfy the first prong of a

prima facie case, the plaintiff need not support her claim with statistics where a disparate impact is obvious. The panel further held that, at this stage of the case, the Controller's Office did not show that it was entitled to a business necessity defense.

## COUNSEL

James A. Sonne (argued) and Zeba A. Huq, Stanford Law School Religious Liberty Clinic, Stanford, California; Wendy E. Musell, Law Offices of Wendy Musell, Oakland, California; Joshua C. McDaniel, Harvard Law School Religious Freedom Clinic, Cambridge, Massachusetts; for Plaintiff-Appellant.

Kelsey Linnett (argued), Supervising Deputy Attorney; Christopher D. Beatty, Deputy Attorney General; Chris A. Knudsen, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; Oakland, California; for Defendants-Appellees.

Eugene Volokh; Aris Prince and Anastasia Thatcher, Certified Law Students; UCLA School of Law First Amendment Clinic; Los Angeles, California; for Amici Curiae Professors Daniel Conkle, Richard Garnett, Douglas Laycock, Michael McConnell, Gregory Sisk, and Nelson Tebbe.

**OPINION**

FRIEDLAND, Circuit Judge:

Brianna Bolden-Hardge challenges a state employer's refusal to allow a religious addendum to the public-employee loyalty oath set forth in the California Constitution. We reverse the district court's dismissal of her Complaint. Bolden-Hardge has stated claims under Title VII and the California Fair Employment and Housing Act, and she should have been granted leave to amend her claims under the Free Exercise Clauses of the federal and state constitutions. Although the state employer has asserted defenses that might ultimately prevail, none of them can be considered at the motion to dismiss stage.

**I.**

**A.**

The California Constitution requires all public employees, except those "as may be by law exempted," to swear or affirm to "support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic" and to "bear true faith and allegiance" to those constitutions. Cal. Const. art. XX, § 3. Bolden-Hardge, a devout Jehovah's Witness, believes that her faith precludes her from "swearing primary allegiance to any human government" over "the Kingdom of God" or pledging to engage in military activity. She objects to California's loyalty oath because she believes that it would require her to pledge primary allegiance to the federal and state governments and to affirm her willingness to take up arms to defend them, both of which she says would violate her religious beliefs.

In 2016, Bolden-Hardge began working for the California Franchise Tax Board without first signing a loyalty oath.  The next year, however, she applied to the California Office of the State Controller and was offered a higher-paying position.  The Controller's Office asked her to take California's loyalty oath, and Bolden-Hardge requested an accommodation to sign the oath with an addendum specifying that her allegiance was first and foremost to God and that she would not take up arms.  Her proposed addendum read:

> I, Brianna Bolden-Hardge, vow to uphold the Constitutions of the United States and of the State of California while working in my role as an employee of the State Controller's Office.  I will be honest and fair in my dealings and neither dishonor the Office by word nor deed.  By signing this oath, I understand that I shall not be required to bear arms, engage in violence, nor to participate in political or military affairs.  Additionally, I understand that I am not giving up my right to freely exercise my religion, nor am I denouncing my religion by accepting this position.

The Controller's Office rejected this proposal.  Because Bolden-Hardge refused to sign the oath in its unmodified form, the agency rescinded her job offer.

Bolden-Hardge subsequently returned to her lower-paying job at the Tax Board, which then required her to take the oath but permitted her to include an addendum like the one that she had proposed to the Controller's Office.

Bolden-Hardge later obtained positions with two other state agencies, neither of which required her to sign a loyalty oath.

**B.**

Bolden-Hardge filed this action in federal court against the Controller's Office and the California State Controller in her official capacity, alleging that their refusal to allow Bolden-Hardge's proposed addendum to the loyalty oath violated Title VII of the 1964 Civil Rights Act under both failure-to-accommodate and disparate-impact theories. She also asserted a failure-to-accommodate claim against the Controller's Office under the California Fair Employment and Housing Act ("FEHA"). Finally, she alleged that the refusal by both Defendants to accommodate her religious beliefs violated the Free Exercise Clauses of the federal and state constitutions.

Bolden-Hardge sought damages for the failure-to-accommodate, disparate-impact, and federal free-exercise claims, but not for the California free-exercise claim. For all claims, she sought a declaratory judgment that the Controller's Office's actions violated her rights and an injunction barring the agency from refusing similar accommodations. On her free-exercise claims she sought relief from both Defendants, but on her Title VII and FEHA claims she sought relief from only the Controller's Office.

Defendants moved to dismiss Bolden-Hardge's Complaint for lack of subject matter jurisdiction and for failure to state a claim. The district court granted the motion in full. The court denied leave to amend, reasoning that Bolden-Hardge could not plead any further facts to save any of her claims because the case involved primarily legal issues rather than factual ones.

Bolden-Hardge timely appealed.

## II.

We review de novo an order granting a motion to dismiss for failure to state a claim, "accept[ing] the complaint's well-pleaded factual allegations as true, and constru[ing] all inferences in the plaintiff's favor." *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (quoting *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016)). Jurisdictional questions, including issues of standing, also are reviewed de novo. *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 559 (9th Cir. 2019). We review a district court's denial of leave to amend for abuse of discretion. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 972 (9th Cir. 2010) (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)).

## III.

We first consider whether Bolden-Hardge has standing to pursue each of her claims. To have standing, a plaintiff must show that she suffered an injury in fact that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If a plaintiff seeks prospective relief, she must show that the threat of future injury is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Past wrongs may serve as evidence of a "real and immediate threat of repeated injury," but they are insufficient on their own to support standing for prospective relief. *City of Los Angeles*

*v. Lyons*, 461 U.S. 95, 102-03 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).    With respect to prospective relief related to employment specifically, a plaintiff may have standing when she is in the process of seeking work from, or reinstatement with, the employer whose conduct she challenges, but lacks standing when there is no indication of a continued wish to work for that employer. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Defendants argue that Bolden-Hardge lacks standing to seek prospective relief because she is no longer seeking employment at the Controller's Office.    Defendants are correct that the Complaint does not allege that Bolden-Hardge wishes or intends to work for the Controller's Office in the future.    Her Complaint indicates that, although she experienced "prolonged underemployment" at the Tax Board following the Controller's Office's rescission of her job offer, she ultimately secured a satisfactory government job.    Her briefing before the district court, too, seemed to concede that she is not seeking reinstatement of the job offer with the Controller's Office.    Only in her opening brief on appeal did Bolden-Hardge first mention the possibility of reinstatement, noting parenthetically that, if given leave to amend her Complaint, she might seek reinstatement as a remedy.    At oral argument before our court, counsel for Bolden-Hardge stated that she is "open to exploring the possibility" of returning to the Controller's Office but did not state that she is actively seeking work there.

Although Bolden-Hardge may sincerely desire to work at the Controller's Office, she did not allege this in her Complaint, nor did she allege that she has taken any concrete step to reapply to the Controller's Office.    She therefore lacks the actual and imminent threat of future injury required

to have standing to seek prospective relief on any of her claims. Bolden-Hardge may, however, attempt to cure this defect by amendment, as she has requested. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-45 (9th Cir. 2015) (holding that plaintiffs may cure deficiencies in standing allegations through supplemental pleadings).

As currently pleaded, then, Bolden-Hardge's alleged injury is redressable only through a claim for damages. It is clear that she can seek damages from the Controller's Office on her Title VII claims because that statute abrogates states' sovereign immunity. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 453 n.9 (1976). She also can seek retrospective damages from the Controller's Office under FEHA because state employers are likewise subject to suits for damages under that state law. *See DeJung v. Superior Ct.*, 87 Cal. Rptr. 3d 99, 107-09 (Ct. App. 2008).

By contrast, as currently pleaded, Bolden-Hardge cannot obtain damages for her free-exercise claim under 42 U.S.C. § 1983. She seeks damages on that claim both from the Controller's Office and from the State Controller in her official capacity. But § 1983 does not provide a cause of action to sue state entities or state officials in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-67, 71 (1989). To remedy this defect, Bolden-Hardge sought leave from the district court to amend her Complaint to seek damages from Betty Yee, the State Controller at the time the job offer was rescinded, in her individual capacity. *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (permitting a § 1983 damages claim against state officials sued in their individual capacities). Leave to amend should be granted generously, after considering "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously

amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). There is no evidence in this case of delay, prejudice, or bad faith; Bolden-Hardge has not previously amended her Complaint; and it is not clear that amendment would be futile.[1] Therefore, although the district court was correct to dismiss the federal free-exercise claim for lack of jurisdiction, it abused its discretion in denying leave to amend on that claim.

Finally, Bolden-Hardge expressly did not seek damages on her free-exercise claim under the California Constitution, so she lacks standing to pursue that claim as currently pleaded. She has not sought leave to amend her Complaint specifically to add a claim for damages under the state constitution, but she has made a general request for leave to amend her Complaint to cure any defects. On remand, the district court shall determine whether Bolden-Hardge is seeking to amend this claim and, if so, whether leave to amend should be granted.

Because Bolden-Hardge has standing to seek damages on her claims under Title VII and FEHA, we have jurisdiction to consider the merits of those claims.

## IV.

### A.

Title VII and FEHA forbid an employer from denying a job to an applicant because of her religion. 42 U.S.C. § 2000e-2(a)(1); Cal. Gov't Code § 12940(a). Both statutes

---

[1] Given Bolden-Hardge's lack of standing for her federal free-exercise claim, we lack jurisdiction to reach that claim's merits and cannot do more than conclude that it is possible that she could state a claim by amending.

require employers to accommodate job applicants' religious beliefs unless doing so would impose an undue hardship. 42 U.S.C. § 2000e(j); Cal. Gov't Code § 12940(l)(1).[2]  Claims under Title VII and FEHA for failure to accommodate religion are accordingly analyzed under a burden-shifting framework. *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) (Title VII); *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017) (FEHA).[3]  First, the employee must plead a prima facie case of failure to accommodate religion.  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999).  Second, if the employee is successful, the employer can show that it was nonetheless justified in not accommodating the employee's religious beliefs or practices.  *Id.*

### 1.

To plead a prima facie case of failure to accommodate religion under Title VII and FEHA, a plaintiff must allege, among other things, that she holds "a bona fide religious belief" that conflicts with an employment requirement. *Heller*, 8 F.3d at 1438 (Title VII); *Friedman v. S. Cal.*

---

[2] Both laws apply to state employers such as the Controller's Office. 42 U.S.C. § 2000e(f); Cal. Gov't Code § 12926(d); *see also Dothard v. Rawlinson*, 433 U.S. 321, 331 n.14 (1977) (Title VII); *DeJung v. Superior Ct.*, 87 Cal. Rptr. 3d 99, 107 (Ct. App. 2008) (FEHA).

[3] "Because FEHA is interpreted consistently with Title VII," *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1023 n.2 (9th Cir. 2014), our analysis of the federal and state claims is the same. *See Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1113 (Cal. 2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes."); *Soldinger v. Nw. Airlines, Inc.*, 58 Cal. Rptr. 2d 747, 762 n.11 (Ct. App. 1996) (noting that California courts look to federal cases interpreting Title VII in evaluating failure-to-accommodate allegations).

*Permanente Med. Grp.*, 125 Cal. Rptr. 2d 663, 666 (Ct. App. 2002) (FEHA).

The parties contest whether Bolden-Hardge has adequately pleaded a conflict between her job requirements and religious beliefs.[4]    Bolden-Hardge objects to the component of the loyalty oath requiring its taker to swear or affirm "true faith and allegiance" to the federal and state constitutions. Cal. Const. art. XX, § 3. She contends that her "sincerely held religious beliefs mandate that her allegiance is first and foremost to the Kingdom of God" and that she cannot "swear[] primary allegiance to any human government." The oath requirement conflicts with her faith,

---

[4] The Controller's Office briefly argues that both Title VII and FEHA recognize conflicts only between religious beliefs and job *duties* and therefore do not extend to the facts of this case, where the loyalty oath is more a prerequisite than a duty. We are aware of no precedent, however, that has so limited the scope of Title VII. General employment prerequisites may be challenged in the disparate impact context, *see Griggs v. Duke Power Co.*, 401 U.S. 424, 433-34 (1971), and it would be inconsistent with the purpose of Title VII to preclude disparate treatment claims in which plaintiffs similarly allege conflicts with employment prerequisites. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (describing one of Title VII's "central statutory purposes" as "eradicating discrimination throughout the economy"). FEHA was likewise adopted with the "express purpose" of "preventing and deterring unlawful discrimination in the workplace," *Harris v. City of Santa Monica*, 294 P.3d 49, 52 (Cal. 2013), and limiting that statute's reach to only job duties would be inconsistent with that purpose. Indeed, the California Court of Appeal has rejected "too narrow a view of what constitutes an employment 'requirement,'" reasoning that "[a]ll employees have two kinds of work requirements: those defined by the particular duties of their position, and those defined by the general policies of the employer," both of which are actionable under FEHA. *Ng v. Jacobs Eng'g Grp.*, No. B185838, 2006 WL 2942739, at *6 (Cal. Ct. App. Oct. 16, 2006) (unpublished).

she argues, because it forces her to choose between her religious beliefs and a government job. The Controller's Office, meanwhile, argues that the loyalty oath does not require its takers to pledge loyalty to government *over* religion, and it therefore poses no conflict with Bolden-Hardge's religious beliefs.

Bolden-Hardge insists that the Controller's Office is inviting us to opine impermissibly on whether her religious views are reasonable. The Supreme Court has, albeit in the free exercise context, cautioned against second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's "'narrow function . . . in this context is to determine' whether the line drawn reflects 'an honest conviction.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981)). This principle does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value. *See Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016-17 (9th Cir. 2016) (deeming inadequate plaintiffs' assertion that a statute prohibiting cannabis substantially burdened their religious beliefs because they did not allege that cannabis served a religious function and they conceded that their religious ceremonies did not involve cannabis). Still, the burden to allege a conflict with religious beliefs is fairly minimal. *See Thomas*, 450 U.S. at 715. With these principles in mind, we do not interrogate the reasonableness of Bolden-Hardge's beliefs

and instead focus our inquiry on whether she has alleged an actual conflict.  We hold that she has done so.**5**

The Controller's Office correctly points out that the oath does not expressly require a pledge of *ultimate* or *primary* allegiance to the federal and state constitutions.  But construing all facts and inferences in Bolden-Hardge's favor, it is possible to understand the oath as requiring state employees to place their allegiance to the federal and state constitutions over their allegiance to God for the purposes of their work.  Indeed, California's apparent rationale for the oath requirement is to ensure that if an oath taker's religion ever comes into conflict with the federal or state constitutions, religion must yield.

It is in fact this very rationale that the Controller's Office invokes in defending the oath requirement.  The oath is critical, the Controller's Office urges, because the government's workforce must be "uniformly and unreservedly" committed to supporting and defending the federal and state constitutions and to "the proper functioning of constitutional government."  The Controller's Office insists that a "vague 'first loyalty to God' qualification to the

---

5 We also observe that Bolden-Hardge is not alone in her stated convictions.  As Bolden-Hardge notes, Jehovah's Witnesses have repeatedly challenged similar oath requirements as inconsistent with their religious beliefs. *See, e.g.*, *Lawson v. Washington*, 296 F.3d 799, 802 (9th Cir. 2002); *Bessard v. Cal. Cmty. Colls.*, 867 F. Supp. 1454, 1456 (E.D. Cal. 1994); EEOC Decision No. 85-13, 38 Fair Empl. Prac. Case (BNA) 1884 (1985), 1985 WL 32782.  Although these cases do not address whether a loyalty oath requirement poses a conflict with Jehovah's Witnesses' religious beliefs for the purposes of a failure-to-accommodate claim, they do support the notion that Bolden-Hardge's beliefs reflect "an honest conviction." *Burwell*, 573 U.S. at 725 (quoting *Thomas*, 450 U.S at 716).

oath would effectively nullify the oath." And it contends that, "without an unqualified commitment to the Constitution, a promise to adhere to constitutional rules, except when they conflict with personal and undefined religious beliefs, is no promise at all." Although these are persuasive arguments supporting the oath's importance, they belie the Controller's Office's position that the oath poses no conflict with Bolden-Hardge's pleaded religious beliefs. If an employee cannot claim "first loyalty to God," she must, by implication, owe first loyalty to something else―here, the federal and state constitutions.

The California Court of Appeal recognized this implication when faced with a similar request to modify the loyalty oath. In *Smith v. County Engineer*, 72 Cal. Rptr. 501 (Ct. App. 1968), the court rejected a proposed addendum to the oath that the court interpreted as allowing the plaintiff to prioritize his commitment to God over that to the state and nation. *Id.* at 508-09. *Smith* was decided before Title VII was amended to apply to state employers, *see* Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103 (1972) (codified at 42 U.S.C. § 2000e *et seq.*), so the court had no reason to consider whether the statute required allowing such an addendum. But the court's characterization of the loyalty oath suggests that the California Constitution requires public employees to swear or affirm that "if [their] religious beliefs and the support and defense of the constitution do not square," it is the former, and not the latter, that must yield. *Smith*, 72 Cal. Rptr. at 509.

We therefore hold that Bolden-Hardge has adequately alleged that the "faith and allegiance" component of the loyalty oath poses a conflict with her religious beliefs. Because Bolden-Hardge has pleaded a conflict between her

religious beliefs and this portion of the loyalty oath, we do not consider her alternate arguments for a conflict, including whether the portion of the oath requiring public employees to "support and defend" the state and federal constitutions conflicts with her religious objection to taking up arms. Cal. Const. art. XX, § 3.   The Controller's Office does not otherwise contest the sufficiency of Bolden-Hardge's prima facie case.

**2.**

We next consider whether the Controller's Office can rebut Bolden-Hardge's prima facie case by demonstrating that it was justified in not accommodating her religious beliefs.

Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).   Undue hardship is an affirmative defense, *see Tabura v. Kellogg USA*, 880 F.3d 544, 557 (10th Cir. 2018), and accordingly dismissal on that ground is proper "only if the defendant shows some obvious bar to securing relief on the face of the complaint" or in "any judicially noticeable materials," *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

The Controller's Office argues that it is entitled to a presumption of undue hardship as a matter of law because accommodating Bolden-Hardge's religious beliefs would

require it to violate the California Constitution.**[6]**   In cases involving private employers, we have held that "an employer is not liable under Title VII [for failure to accommodate] when accommodating an employee's religious beliefs would require the employer to violate federal or state law" because "the existence of such a law establishes 'undue hardship.'" *Sutton*, 192 F.3d at 830; *see also Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383-84 (9th Cir. 1984) (recognizing an undue hardship where an accommodation would have required the employer to risk liability for violating state law). The Controller's Office invites us to extend the *Sutton* presumption to state employers, but we decline to do so.

In our cases applying the *Sutton* presumption, the private-employer defendants faced potential liability for violating the law and had no ability to create or enforce that law. *See Sutton*, 192 F.3d at 837-38; *Bhatia*, 734 F.2d at 1383-84. We held that a *private* employer demonstrated an undue hardship when the employer "established that if it were to [accommodate the employee], it would risk liability for violating" state law. *Bhatia*, 734 F.2d at 1384. Here, by contrast, the Controller's Office is part of the very state government that is responsible for creating and enforcing the oath requirement, and there is no indication that violating the

---

[6] It is not clear that the California Constitution forbids addenda such as the one that Bolden-Hardge proposed. *See Smith*, 72 Cal. Rptr. at 509 (deeming one particular modification of the loyalty oath unacceptable but not holding that all modifications are barred as a matter of law). We need not resolve that question of California law because, as we will explain, even if the Controller's Office would violate state law by permitting Bolden-Hardge's proposed addendum, the Controller's Office would not be entitled to a presumption of undue hardship. We therefore assume without deciding that such an addendum would violate California law.

oath requirement would subject the Controller's Office to an enforcement action by some other part of the state government.  Notably, the oath provision in the California Constitution contains no express enforcement mechanism.  And Bolden-Hardge has alleged that other state agencies have accommodated her religious beliefs, yet the Controller's Office has not indicated that those agencies faced enforcement.

Furthermore, to exempt the Controller's Office from a federal accommodation requirement *solely* because the requested accommodation would violate state law would essentially permit states to legislate away any federal accommodation obligation, raising Supremacy Clause concerns.  *See Malabed v. N. Slope Borough*, 335 F.3d 864, 871 (9th Cir. 2003) (explaining that the preemption provision in the Civil Rights Act of 1964 invalidates state laws that are inconsistent with the Act's purpose).  Although this concern is present in cases involving private employers arguing per se undue hardship under state law, it is heightened where the defendant is part of the very state whose law would be violated.  The state could otherwise enact a law for the sole purpose of evading federal accommodation requirements, even without any intent to enforce the law or otherwise give it effect.  Where there is no indication of an actual threat of enforcement or liability for violating that state law, the risk that the state is attempting to evade federal accommodation requirements is too high to allow for dismissal at the pleading stage because of this sort of purported undue hardship.  We therefore hold

that the Controller's Office is not entitled to a presumption of undue hardship.[7]

The Third Circuit has similarly focused on the risk of enforcement in considering whether a public employer that was sued for failing to accommodate religion faced an undue hardship where such accommodation would violate state law. In *United States v. Board of Education*, 911 F.2d 882 (3d Cir. 1990), the Department of Justice alleged that the Board of Education for the School District of Philadelphia violated Title VII by refusing to employ or accommodate public school teachers who sought to wear religious garb. *Id.* at 885. The Board refused such accommodations because a state statute threatened school administrators with "criminal prosecution, fines, and expulsion from the profession" if they allowed teachers to wear religious garb. *Id.* at 885, 891. In concluding that the Board established an undue hardship, the Third Circuit emphasized that accommodating religious employees would expose administrators to serious consequences. *Id.* at 891. It noted that the Pennsylvania and United States Supreme Courts had deemed the state statute constitutional and, therefore, "there was no assurance that the prosecutorial authorities in Pennsylvania would not enforce the statute against school administrators who failed to carry out the dictates of the statute." *Id.* at 890. Importantly, the Third Circuit expressly declined to consider

---

[7] *Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013), addressed a different question, because there the Fifth Circuit considered a *federal* government employer's assertion that violating a federal statute would pose an undue hardship. *See id.* at 329-30. *Tagore* did not raise the same Supremacy Clause concerns as this case because the public employer there was not a state employer and was asserting a federal law obligation, not a state law obligation.

the different situation in which "the chances of enforcement are negligible." *Id.* at 891.

Bolden-Hardge's case presents exactly the sort of situation that the Third Circuit carved out in *Board of Education*: Here, nothing suggests that the Controller's Office would face legal consequences for accommodating Bolden-Hardge. If anything, the Complaint suggests that enforcement is unlikely, given Bolden-Hardge's allegations that other state agencies have accommodated her.

The Controller's Office may ultimately provide evidence that it would in fact face liability for accommodating Bolden-Hardge. It may also be able to demonstrate an undue hardship under a different theory, given its stated interest in ensuring that government employees are committed to upholding the federal and state constitutions. *See Cole v. Richardson*, 405 U.S. 676, 684-85 (1972) (upholding a loyalty oath against freedom of speech and assembly challenges and recognizing that legislatures enacted such oaths "to assure that those in positions of public trust were willing to commit themselves to live by the constitutional processes of our system"); *Am. Commc'ns Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 415 (1950) ("Clearly the Constitution permits the requirement of [loyalty] oaths . . . . Obviously the Framers of the Constitution thought that the exaction of an affirmation of minimal loyalty to the Government was worth the price of whatever deprivation of individual freedom of conscience was involved."). Any such defense, however, is not obvious from the face of Bolden-Hardge's Complaint. This is especially so because the Complaint alleges that other California agencies hired Bolden-Hardge without requiring the oath, calling into question the likelihood of enforcement, as well as the importance of any state interest we might otherwise infer from Supreme Court

caselaw upholding the constitutionality of loyalty oaths in other contexts.    We therefore cannot consider the Controller's Office's undue hardship defense at this stage in the proceedings.**[8]**  *ASARCO, LLC*, 765 F.3d at 1004.

### B.

We now turn to whether Bolden-Hardge has stated a claim of disparate impact under Title VII.  Title VII bars an employer from using a "particular employment practice that causes a disparate impact on the basis of . . . religion" unless the employer can show that the practice is job-related and "consistent with business necessity."  42 U.S.C. § 2000e-2(k)(1)(A)(i).

### 1.

To plead a prima facie case of disparate impact, a plaintiff must "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact."    *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).

The parties dispute what is required to satisfy the first prong of this prima facie case.  The Controller's Office asserts that pleading a prima facie case of disparate impact requires the plaintiff to support her claim with statistics, whereas Bolden-Hardge contends that statistics are not

---

[8] We also do not address whether the undue hardship analysis under FEHA differs from the analysis under Title VII.  The Controller's Office has not argued that the undue hardship defense succeeds under FEHA even if it fails under Title VII.  Nor does either party argue that the analysis of Bolden-Hardge's Title VII and FEHA claims diverges at the undue-hardship stage.

required where a disparate impact is obvious, as she argues it is here.  We agree with Bolden-Hardge.

It is true that plaintiffs often support their claims of disparate impact with statistics.  *See, e.g.*, *Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002); *Robinson v. Adams*, 847 F.2d 1315, 1318 (9th Cir. 1987).  Yet statistics are not strictly necessary.  *See Sakellar v. Lockheed Missiles & Space Co.*, 765 F.2d 1453, 1456-57 (9th Cir. 1985) (suggesting that statistics would not have been the only way to prove a disparate impact on older individuals).  This is particularly true where a disparate impact is obvious.  For example, in *Hung Ping Wang v. Hoffman*, 694 F.2d 1146 (9th Cir. 1982), we held that a plaintiff pleaded a prima facie case because he observed that his employer's language-skills requirement would disproportionately affect minority applicants.  *Id.* at 1148-49.  We reasoned that the requirement "seem[ed] on its face to have a disparate impact on minority applicants," and we did not require the plaintiff to demonstrate that impact with statistics to avoid dismissal. *Id.* at 1149.  Several of our sister circuits have likewise held that Title VII plaintiffs are not limited to proving disparate impact with statistics, even after discovery—suggesting that statistics are certainly not always necessary at the pleading stage.  *See, e.g.*, *Lynch v. Freeman*, 817 F.2d 380, 387-88 (6th Cir. 1987) ("While Title VII plaintiffs may be able to prove some disparate impact cases by statistics, that is not the only avenue available."); *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996) (observing that if "all or substantially all pregnant women" faced the same lifting limitation, "they would certainly be disproportionately affected" by an employer's lifting requirement, making "[s]tatistical evidence . . . unnecessary").

Bolden-Hardge alleges a disparate impact similarly obvious to that in *Hoffman*. She contends that her religious beliefs are "consistent with [those] of other Jehovah's Witnesses," who also believe that their faith forbids them from swearing primary allegiance to any human government. *See supra* note 5. As discussed with respect to Bolden-Hardge's failure-to-accommodate claim, as pleaded this belief is in tension with the loyalty oath requirement: The oath implicitly requires that its takers place their allegiance to the federal and state constitutions over that to God, which is exactly what Bolden-Hardge alleges her faith forbids her from doing. Accepting as true Bolden-Hardge's well-pleaded allegation that other Jehovah's Witnesses share this belief, we must presume that the oath requirement will impact "all or substantially all" Jehovah's Witnesses seeking government employment by making them feel they must choose between government employment and their religious beliefs—a burden not all prospective employees face. *Garcia*, 97 F.3d at 813. This is precisely the sort of obvious impact that a plaintiff need not support with statistics to plead a prima facie case. *See id.*; *Hoffman*, 694 F.2d at 1149. Bolden-Hardge therefore has satisfied the first prong of the prima facie case for disparate impact, and the Controller's Office does not contest that she satisfied the remaining prongs.

## 2.

The Controller's Office contends that, even if Bolden-Hardge pleaded a prima facie case of disparate impact, the loyalty oath is justified because it is consistent with business necessity. The business necessity defense permits employment practices that have a disparate impact on a protected class if the practices have "a manifest relationship to the employment in question." *Griggs v. Duke Power Co.*,

401 U.S. 424, 432 (1971).  Like undue hardship, business necessity is an affirmative defense, *see Freyd v. Univ. of Or.*, 990 F.3d 1211, 1224 (9th Cir. 2021), and therefore cannot be considered at the motion-to-dismiss stage unless the defense's success is obvious from the face of the complaint or from judicially noticeable materials, *see ASARCO, LLC*, 765 F.3d at 1004.

The loyalty oath is a business necessity, the Controller's Office argues, because public employees must be "committed to working within and promoting the fundamental rule of law while on the job."  The Controller's Office emphasizes that the oath is meant to ensure that public servants are committed to upholding the rule of law, supporting and defending the federal and state constitutions, and promoting the proper functioning of constitutional government.  It asserts that allowing addenda that indicate an oath-taker's primary loyalty to God would render the oath meaningless and undermine critical state interests.  This assertion may well prove true and, if so, the Controller's Office may be able to defeat Bolden-Hardge's disparate impact claim at a later stage of the litigation.  But this is not apparent from the face of her Complaint or any judicially noticeable materials, particularly given the state's alleged practice of exempting some employees from the oath requirement.  As with the Controller's Office's defense of undue hardship, we therefore cannot affirm dismissal at this stage on business necessity grounds.

## V.

For the foregoing reasons, we **REVERSE** the decision of the district court and **REMAND** for further proceedings consistent with this opinion.